*191 OPINION OF THE COURT
Smith, J.
The issue here is whether an audiotape made by an Associate Medical Examiner is Rosario material which must be turned over to defendant by the prosecutor. Because the audiotape may not be deemed in the control or possession of the People, we affirm the order of the Appellate Division refusing to vacate defendant’s conviction.
Prior to defendant’s trial for the fatal stabbing of Kevin Gregg, Dr. Joaquin Gutierrez, an Associate Medical Examiner of the office of the Chief Medical Examiner (OCME), performed the autopsy on the victim’s body. Gutierrez testified concerning the location and extent of the victim’s wounds and stated that two different knives may have been used in the killing. Defendant was convicted on April 25, 1991, after a nonjury trial, of manslaughter in the first degree.
On December 6, 1993, the Appellate Division affirmed defendant’s conviction (see, People v Washington, 199 AD2d 294), and a Judge of this Court denied defendant’s application for leave to appeal (People v Washington, 83 NY2d 811). While defendant’s direct appeal was pending, defendant filed a CPL 440.10 motion to vacate his conviction, contending that the People failed to relinquish an audiotape made by Dr. Gutierrez immediately after the autopsy. Supreme Court denied the motion and defendant appealed to the Appellate Division. The Appellate Division unanimously affirmed (196 AD2d 346), and a Judge of this Court granted defendant’s application for leave to appeal.
Defendant contends that the People’s failure to turn over the audiotape and all memorialized statements prepared by the Medical Examiner who testified for the prosecution at trial, violated the Rosario rule as a matter of law, requiring reversal of the conviction, or a hearing to determine whether the People exert sufficient "control” over OCME. The People counter that Rosario does not compel them to provide defendant with the materials defendant seeks and that notwithstanding the issue of "control,” defendant is not entitled to reversal of his conviction.
In People v Rosario (9 NY2d 286, 289, cert denied 368 US 866), we held that the People were required to provide for defendant any recorded statement of a prosecution witness made to the police, District Attorney or the Grand Jury, related to that witness’ trial testimony. This rule was codified *192 in CPL 240.45 (1) (a). Rosario material has been held to include notes and follow-up reports of police officers (People v Martinez, 71 NY2d 937, 939; People v Gilligan, 39 NY2d 769; People v Malinsky, 15 NY2d 86, 90); memo books of police officers (People v Ranghelle, 69 NY2d 56); complaint reports filed at police precincts (id.); bribe-offer statements to a witness recorded at the request of the police (People v Perez, 65 NY2d 154); a police report containing statements of a witness (People v Novoa, 70 NY2d 490) and worksheets of a prosecutor containing notes of oral statements by witnesses (People v Consolazio, 40 NY2d 446).
In each of the aforementioned cases, it was clear that the People’s Rosario obligation included the material which was not produced because it was in the actual possession of a law enforcement agency. Where the material sought is in the possession of a person or agency other than a law enforcement agency, the test of the People’s obligation to produce is whether the items sought are in the "control” of the People (see, People v Flynn, 79 NY2d 879, 882 [material in possession of Department of Motor Vehicles, a State administrative agency, were not in control of prosecutor]; People v Tissois, 72 NY2d 75, 78 [statements of victims of sexual abuse made to a social worker were not in control of the prosecutor]; People v Reedy, 70 NY2d 826, 827 [a personal account of a sexual attack written by the victim, a free-lance writer, was not Rosario material which was in the control of the prosecutor]; see also, People v Fishman, 72 NY2d 884 [untranscribed plea minutes were not Rosario material which the People were required to produce]).
Turning to the case before us, it is clear that the duties of OCME are, by law, independent of and not subject to the control of the office of the prosecutor, and that OCME is not a law enforcement agency. The Medical Examiner is required to perform an autopsy in cases where a homicide is being investigated (Public Health Law § 4210 [2]; § 4210-c [2]; NY City Charter § 557 [f]). According to section 557 (g) of the NY City Charter, the Chief Medical Examiner must maintain "full and complete records in such form as may be provided by law” and "shall promptly deliver to the appropriate district attorney copies of all records relating to every death” where in the opinion of the Medical Examiner some indication of criminality exists. Administrative Code of the City of New York §§ 17-202 and 17-203 also require OCME to consider the circumstances surrounding a death to determine the cause, especially *193 where foul play is suspected. The mandate to OCME is clear, to provide an impartial determination of the cause of death. That, however, cannot be equated with control by the People, which is essential to the Rosario obligation. The People have no power to dictate the contents or practices within OCME. Moreover, Medical Examiners have no authority to gather evidence with an eye toward prosecuting a perpetrator. Neither the New York City Charter nor the Administrative Code requires that they have training in law enforcement.
Although it was defendant’s responsibility to subpoena the audiotape, we caution that nothing here should be construed to "dilute the Rosario obligation” (see, People v Ranghelle, 69 NY2d 56, 64, supra). Rather, that obligation simply does not arise where, as here, the People lack control over the items in question and the entity in possession of them is not a law enforcement agency (see, People v Reedy, 70 NY2d 826, 827, supra; People v Flynn, 79 NY2d 879, 882, supra).
Because we have determined that the People do not have sufficient "possession or control” over documents maintained by OCME, we need not address whether the audiotape would have constituted a "duplicative equivalent” of the information contained in the autopsy report. Moreover, nothing in this record indicates that the defendant should receive a hearing on the issue of control. The facts here are distinguishable from instances where the defendant seeking evidence has not had the opportunity to determine whether the evidence is within the People’s control. Illustrative of this point is our decision in People v De Jesus (69 NY2d 855). De Jesus involved an 11-year-old child’s claim that her father had raped and sexually abused her. The defendant sought statements the child made to a social worker employed by the Bureau of Child Welfare. The People’s objection to the defendant’s request was sustained on grounds differing from those the People argued at this Court. Because the trial court did not have the opportunity to address the People’s subsequent contentions here, that the statements were privileged under CPLR 4508 and that nothing in the prosecutor’s possession was relevant to the defendant’s case, we were compelled to remand for a new trial. Here, defendant and the trial court have had ample opportunity to address the People’s consistent position — that they do not exert sufficient control over OCME to require production of the audiotape. Thus, we hold that, on the facts presented, defendant was not entitled to have the *194 prosecutor produce the audiotape made subsequent to the autopsy.
Accordingly, the order of the Appellate Division should be affirmed.