■ The People of the State of New York, Respondent, v Betty Wright, Appellant. [639 NYS2d 361]

On this appeal defendant's sole claim is that she is entitled to a new trial because she was not provided with copies of certain documents in the Office of the Chief Medical Examiner's ("OCME") file which pertain to the autopsy performed on the decedent in violation of the prosecution's statutory and voluntary disclosure obligations.* Defendant's argument fails, however, because the undisclosed documents were not in the possession or control of the People, who exercised reasonable diligence in carrying out their discovery obligations.

Before perfecting defendant's direct appeal, appellate counsel served a judicial subpoena upon the OCME and obtained the documents at issue on this appeal. Defendant then moved before the trial court to set aside her conviction in a post-judgment motion brought pursuant to CPL 440.10 (1) (f), arguing that the People had violated their Rosario, Brady, statutory and voluntary disclosure obligations. The trial court conducted a hearing, and thereafter issued a comprehensive and thoughtful decision that primarily focused on the People's failure to turn over a document known as the Case Worksheet.

In addition to finding that the Case Worksheet constituted Rosario material, the court originally held that it should have been disclosed under Brady principles. Although the trial court found that the undisclosed Case Worksheet was not exculpatory in the classic sense, it was of the opinion that it might have been useful to the defense in cross-examination of the medical examiner. The trial court noted that there was neither bad faith nor inadvertence on the part of the prosecution in the failure to disclose the document. Rather, the prosecution had, in fact, turned over everything that the OCME had provided to it. Construing the then existing precedents, the trial court granted the motion to vacate the judgment.

Subsequent to the trial court's original decision, it was definitively held that the OCME is not a law enforcement

---

* The documents at issue are the Inventory of Medicolegal Case Record, Personal Identification of Body Report, Telephone Notice of Death, Supplemental Case Information Report, Case Worksheet, and handwritten notes pertaining to the autopsy itself.

agency under the control of the People (*People v Washington*, 86 NY2d 189; *see also, People v Smith*, 206 AD2d 102, *affd* 85 NY2d 1018). The People then moved to reargue the trial court's decision granting defendant's CPL article 440 motion. The trial court granted the motion to reargue, and, upon reconsideration, denied defendant's CPL article 440 motion in its entirety.

The trial court explained that "[a]n essential premise for [its original] decision regarding both *Rosario* and *Brady* violations was a finding that the People, based upon their discovery obligations, and statutory relationship with the OCME * * * were presumed to know and constructively possessed the Case Worksheet which was in the actual possession of the OCME". It held that, in light of the clear holding of *Washington*, the missing material was clearly not *Rosario* material. As to whether the document constituted *Brady* material, the trial court held that because "the trial prosecutor in this case did not in fact know of the Case Worksheet's existence in the deceased's [OCME case] file,' however remiss that was, under *Washington*, that failure did not rise to the level of a *Brady* violation". The trial court reinstated defendant's conviction. An associate Justice of this Court then granted defendant permission to appeal from the denial of her CPL article 440 motion, and directed that the appeal be consolidated with the defendant's direct appeal.

In her principal brief, defendant attempts to revive her *Rosario* and *Brady* argument by distinguishing *Washington (supra)* on the ground that here she voluntarily agreed to participate in an open-file disclosure procedure utilized by the office of the Bronx County District Attorney. This fact alone, however, does not alter the analysis of who had control and possession of the documents for purposes of determining whether they constituted *Rosario* or *Brady* material in the first place. Defendant proffers no compelling rationale for permitting such a metamorphosis of what is clearly not *Rosario* and *Brady* material under *Washington*.

Alternatively, defendant argues that the various documents should have been provided pursuant to the Voluntary Disclosure Agreement and the provisions of CPL 240.20. While a copy of an executed Voluntary Disclosure Agreement is not contained in the record on appeal, it is not disputed that defendant opted to participate in the open discovery procedure, with its known advantages of reducing motion practice and expediting discovery (*see, People v Colavito*, 87 NY2d 423). A blank copy of the "Bronx County Voluntary Disclosure Agreement" contained in the record provides:

"The above-named defendant, having been indicted in Bronx County and wishing to secure discovery of property pursuant to Article 240 of the Criminal Procedure Law, and the District Attorney of Bronx County, wishing to disclose property to the defendant to which he *[sic]* is entitled pursuant to this Article, and all parties wishing to dispense with motion papers to effectuate discovery of the prosecutor's case,

"NOW, THEREFORE ALL PARTIES AGREE THAT the District Attorney will provide the attorney of record for the defendant:

"1) A Voluntary Disclosure Form (VDF) which contains C.P.L. notice provisions * * * and acknowledgement of our duty pursuant to *Brady.*

"2) All items contained in C.P.L. § 240.20 which exist in the instant case.

"3) [various police reports]

"4) Any medical record of the victim relating to the crime charged.

"The District Attorney will use all reasonable and diligent efforts to secure these materials and provide them to the defense attorney within 45 days of arraignment. * * *

"The defendant will not submit a C.P.L. § 240.20 Demand Letter or a Motion for a Bill of Particulars, or a Discovery Motion, or submit a Subpoena Duces Tecum in connection with this case. He *[sic],* however, retains the right to submit a written motion within 10 days after the 45 day period for any item contained in § 240.20 of the Criminal Procedure Law to which he *[sic]* has a legal right and was not supplied by the District Attorney."

Defendant argues that, regardless of the lack of an institutional relationship between the OCME and the District Attorney's office, the People were required to disclose the documents at issue here pursuant to subdivisions 2 and 4 of the Bronx County Voluntary Disclosure Agreement, which, of course, reference and incorporate CPL article 240. In support of her position, defendant points to the Agreement's incorporation by reference of CPL 240.20 (2), which requires the People to make "a diligent, good faith effort to ascertain the existence of demanded property and *to cause such property to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control*; provided, that the prosecutor shall not be required to obtain by subpoena duces tecum demanded material which the defendant may thereby obtain" (emphasis added). In light of the foregoing, defendant argues that the People were not required to disclose medical

reports only within their control, but rather "any" report pertaining to the autopsy, regardless of the institutional relationship between the Office of the Chief Medical Examiner and the District Attorney's office. Defendant also relies on *People v DaGata* (86 NY2d 40), wherein the Court of Appeals held that CPL 240.20 (1) (c) required the People to obtain notes prepared by an FBI laboratory, an agency that was not directly within the District Attorney's control (*compare, People v Colavito, supra*). Thus, according to defendant, the trial court erred in granting reargument and denying her motion to set aside the judgment on the grounds that CPL 240.20 and, consequently, the Voluntary Disclosure Agreement, were violated.

At the heart of the issue presented is CPL 240.20 (2), which requires the prosecutor to make a "diligent, good faith effort to ascertain the existence of demanded property." Contrary to defendant's argument, CPL 240.20 would not ordinarily require the People to discover and disclose documents which had not been provided to them by the OCME as there is a later provision in CPL 240.20 which qualifies the prosecutor's disclosure obligation by relieving the People of any duty "to obtain by subpoena duces tecum demanded material which the defendant may thereby obtain" (CPL 240.20 [2]; *see, People v Colavito, supra*). CPL 240.20 delineates the items discoverable from the prosecutor and CPL 240.20 (2) provides for the defendant's securing by subpoena any of these items not in the possession of the prosecutor. The Case Worksheet at issue was not in the actual possession of the prosecutor and, in light of the holding in *People v Washington (supra),* that OCME is not a law enforcement agency, it was also not in the prosecutor's constructive possession. Given that the documents at issue, including the Case Worksheet, were in the possession and control of a third party (OCME), defendant's ordinary means of obtaining that material was a subpoena duces tecum.

However, here, presumably unlike in *Colavito*, the Voluntary Disclosure Agreement specifically states that the defendant will refrain from submitting a subpoena for the documents referenced in the form. Defendant argues that this vitiates the limitation imposed in the second clause of CPL 240.20 (2). If so viewed, the Voluntary Disclosure Agreement at issue here would be interpreted as imposing an additional obligation on the prosecution to disclose even those medical records that were not within the prosecutor's actual or constructive possession, but which would have ordinarily been obtainable by defendant by use of a subpoena. In other words, defendant would have us read the Agreement as holding the

People strictly accountable for the non-disclosure of whatever documents may possibly exist, whether known to them or not, whether specifically requested by defendant or not, and without a showing of bad faith or lack of diligence by the People. Contrary to defendant's position, the Voluntary Disclosure Agreement does not impose such a broad duty on the prosecution. The defendant's construction notably fails to account for the clear language also contained in the Agreement providing that the People are only undertaking to "use all reasonable and diligent efforts to secure these materials and provide them to the defense attorney within 45 days of arraignment."

Furthermore, the Agreement provided that defendant could, within 10 days of the expiration of the 45 day post-arraignment period, move for production of any item to which she or he has legal right pursuant to CPL 240.20. Defendant never made such a motion. Here, unlike in *People v DaGata, (supra)*, defendant, apparently satisfied with the scope of what had been disclosed to her, moved for production of legible copies of the disclosed materials, but never made a specific request or motion for the undisclosed Case Worksheet or other documents.

Given that OCME is not a prosecutorial agency (*People v Washington, supra*) and that the People did not undertake in the Agreement to produce documents neither they nor the defense knew existed, the prosecution cannot be held accountable for how OCME exercised its discretion in disclosing information to the District Attorney. Moreover, we note that in the case at bar the prosecutor had no reason to doubt that OCME had delivered all pertinent records pertaining to the autopsy. Indeed, the prosecution's belief that it had fully disclosed all information in its possession was implicitly confirmed by the defendant's failure to bring any motion to compel production, a right she retained by the terms of the Agreement. Accordingly, the trial court's finding, left undisturbed upon reargument, that "there is no claim, nor is there any evidence whatsoever to support any inference of bad faith" by the prosecutor was fully warranted.

Finally, we note that the prosecutor's conduct here was unlike that of the prosecutor or the trial court in *DaGata* (*compare, People v DaGata*, 86 NY2d 40, *supra* [after defendant unsuccessfully attempts to obtain FBI lab notes, trial court directed People to subpoena documents from FBI and trial court then conducted *in camera* review and withheld documents]). The record is utterly devoid of any indication that trial defense counsel, the prosecution, or the trial court were ever aware of the existence of the undisclosed documents until

the appellate process was underway. There is absolutely not a scintilla of evidence of bad faith or lack of reasonable diligence on the part of the prosecution. Thus, as it cannot be said that the People violated either their statutory or voluntary disclosure obligations, there is no basis upon which to disturb the trial court's denial of defendant's motion pursuant to CPL 440.10 (1) (f). Concur—Ellerin, J. P., Rubin, Kupferman, Williams and Mazzarelli, JJ.