OPINION OF THE COURT
Donald J. Mark, J.
During the defendant’s trial on charges of burglary in the second degree, petit larceny, leaving the scene of an incident and other traffic violations, he claimed three violations of People v Rosario (9 NY2d 286, cert denied 386 US 866) and CPL 240.45 (1) (a), as prior to trial he had moved for discovery, pursuant to CPL 240.20, for any written or recorded statement made by a witness which related to that action,[1] and the prosecutor had not responded.
The defendant asserted that this demand included the 911 tape of a telephone call from a civilian witness to the Emergency Communications System of the County of Monroe, describing the suspicious actions of the defendant (see, People v Buie, 86 NY2d 501), the tape of radio broadcasts between a City of Rochester police officer witness and the Emergency Communications System describing the incriminating actions of that defendant (see, Matter of Peter C., 220 AD2d 584) and the transcript of a civil trial in City Court in which a civilian witness testified about the accident involved in this action (see, People v Fishman, 72 NY2d 884).
The defendant did not request court intervention to enforce these demands (CPL 240.40 [1] [a]; People v Parker, 157 AD2d 519, Iv denied 76 NY2d-793, supra), but he waited until each of those witnesses was called to testify to- complain and to move for a mistrial (see, People v Colavito, 87 NY2d 423). The prosecutor resisted upon the ground that these materials were not in the possession or control of the People (People v Kelly, *499 88 NY2d 248),[2] but she reluctantly complied with the court’s direction to turn over these tapes to the defendant. The defendant’s motions for mistrials were denied, and he was granted a recess to familiarize himself with the tapes so produced (see, People v Colavito, supra; People v Major, 243 AD2d 310, Iv denied 91 NY2d 928).
The prosecutor, as indicated, furnished the 911 tape and the tape of police broadcasts to the defendant. However, she continued to argue that because of People v Kelly (supra) she was not obligated to do so. That case held that records were not in the possession and control of the prosecutor merely because they were in the possession and control of a quasi-law enforcement agency. That decision “removed from the Rosario reach” records of the Department of Correctional Services, Office of the Chief Medical Examiner, Department of Motor Vehicles and Division of Parole (at 252).
Although the testimony of the witness at the civil trial obviously comports with the definition of recorded statement in CPL 240.45 (1) (a) and People v Rosario (supra), City Court is not even a quasi-law enforcement agency, so the People are not in the possession or control of its records. Consequently, their failure to produce this transcript did not constitute a Rosario violation (see, People v Fishman, supra).
The defendant answered the prosecutor’s argument relative to the two tapes with People v Morris (231 AD2d 911, Iv denied 89 NY2d 927, 1097), decided by the Appellate Division, Fourth Department.[3] The status of 911 tapes was not in issue, but the relevant part of that opinion stated that “the routine destruction of the 911 tapes did not warrant sanctions. Although those tapes constituted Rosario material that the People had an obligation to turn over to defendant upon proper demand” (at 912). The defendant relied upon this dictum to support his position.
The prosecutor countered that that appellate decision involved the 911 system of the City of Buffalo, a system operated differently from that in this area. She quoted a named Assistant District Attorney to the effect that the 911 system in Buffalo is part of the Buffalo Police Department, is controlled by that Department and operated by employees of that Department. *500 [4] She also submitted as a court exhibit the contract between the County of Monroe and the City of Rochester establishing an Emergency Communications System. This is the manner in which the prosecutor attempted to distinguish People v Morris (supra).
The agreement between the County and the City discloses that the City plays a minor role in the operation of this Emergency Communications System. The City basically provides and maintains the emergency communications center, and it supervises and trains all employees. The County basically finances the operation of the system, purchases and maintains all equipment, pays all salaries and benefits of all personnel, controls the level and cost of the service provided, promulgates standards for the operation of this service, and appoints the individual responsible for the administration of this service.
The most significant feature of this agreement, as it pertains to this controversy, is that the County has the authority to contract for the services of this system with all police agencies (State, County, town and village), all fire departments and all ambulance companies in this County through subscriber agreements and that the City is a subscriber through such an agreement.
People v Kelly (88 NY2d 248, 252, supra) enumerated the criteria5 for determining whether recorded statements constitute Rosario material as ([5]) “whether these items actually are in or subject to the possession or control of the particular prosecution office”, (2) “whether the potential cross-examination materials are in the actual possession of what is primarily a law enforcement agency”, and (3) “whether material not in the actual possession of the prosecutor or an agency whose records may be deemed in the prosecutor’s control is in any event equally accessible to the defendant”.
Applying these three standards to this situation eliminates these two tapes as material subject to the case and statutory law.[6] (1) These tapes are not actually in or subject to the control of the prosecutor. (2) The Emergency Communications System of the County of Monroe is not primarily a law enforce *501 ment agency, as it services not only the various police departments in this County, but also the fire departments and ambulance companies in this County. In addition, the City of Rochester, not the City of Rochester Police Department, supervises the employees (who are paid by the County), and the City’s primary involvement is as a subscriber to the contract. (3) These tapes were equally accessible to the defendant through the issuance of a subpoena duces tecum, which is the way the prosecutor obtained them.
Accordingly, the tape of the telephone call and the tape of the radio broadcasts did not constitute Rosario material, and the prosecutor was not mandated by the case and statutory law to produce them to the defendant upon his demand.

. The 11 paragraphs of CPL 240.20 (1) do not encompass Rosario material, but this does not appear to preclude its pretrial demand (see, People v Parker, 157 AD2d 519, Iv denied 76 NY2d 793 [where a pretrial request for 911 tapes was enforced by a court order]); CPL 240.45 (1) provides for such discovery after the jury has been sworn.

. The prosecutor could have moved for a protective order prior to trial for this reason (CPL 240.50 [1]; People v DaGata, 86 NY2d 40, 44), so this issue could have been resolved pretrial.

. This Court obviously must follow decisions in its own Department.

. This hearsay statement was received without objection, so it may be considered in the resolution of this issue (see, People v Bedoya, 122 AD2d 545, Iv denied 68 NY2d 998).

. The criterion “whether a compelling reason exists to keep the items confidential” was omitted as not applicable (People v Kelly, supra, at 252).

. People v Washington (86 NY2d 189, 192) lists the items the Court of Appeals has so far considered to be Rosario material.