OPINION OF THE COURT
Patricia M. DiMango, J.
The defendant is seeking an order suppressing the results of the DNA profile comparison test in this case which led to his arrest, as well as any and all fruits thereof.
The court herein determines that the motion is denied.
Background
On September 19, 2001, at 9:30 p.m., the victim, a 15-year-old young woman, was the passenger in a livery cab hailed within the confines of Brooklyn, Kings County. She claims that upon reaching her destination, and after she paid her fare, the driver locked the doors, refused to permit her to leave and then drove her to an abandoned area where he raped her at gunpoint. He then returned her to her original destination. The victim reported the incident to her aunt, 911 was called and she was taken by EMS to St. Vincent’s Hospital, where a sexual assault evidence collection kit was completed. Three days later, on September 22, 2001, the victim advised the *21 investigating New York City detective that she “made this story up” and had not been “raped at all.” Nevertheless, despite the complainant’s recantation, the specimens were tested and resulted in a match with an individual whose DNA was on file in the local database of the Office of the Chief Medical Examiner in New York City. By letter dated January 14, 2002, the Office of the Chief Medical Examiner (OCME) advised the District Attorney that “the DNA profile of the semen donor on the vaginal swab” in the September 19, 2001 incident matched that of a suspect from an April 1997 Kangs County rape case. The suspect was named as Owen Midgley.
Owen Midgley was arrested on or about February 23, 2002, and made a statement to the investigating detective admitting only to engaging in consensual sex with the victim, whom he believed was 19 years old. The victim reaffirmed her original complaint that her sexual contact with the assailant was not consensual, but occurred forcibly at gunpoint. She was thereupon shown a photographic array from which she selected Owen Midgley’s photograph. Midgley was subsequently indicted upon charges of forcible rape in the first degree and other offenses arising from this September 19, 2001 incident.
Defendant Midgley admits to having provided a blood sample in the 1997 rape case; however, he contends that not only was he completely acquitted after trial of the charges therein, but upon information and belief, “the entire record of that case ha[d] been ordered sealed pursuant to CPL § 160.50.” The People confirm this.
Discussion
The defendant maintains that “all records of the DNA profile created in the 1997 case” should have been sealed, destroyed and expunged, and that the use of such records, as well as the possible reuse of the original sample, to bring about his arrest in the instant case was in violation of his constitutional rights, as well as of the rights conferred upon him pursuant to CPL 160.50 and Executive Law article 49-B. The defendant argues, therefore, that the only appropriate remedy is suppression of the test results and any and all fruits thereof.
The People oppose this application in its entirety, contending first, that the use of the defendant’s DNA profile developed from the blood sample taken in the 1997 case and maintained at the local database of the OCME does not violate the defendant’s rights pursuant to the Fourth Amendment and further, that the use of these samples herein is not governed *22 by either CPL 160.50 or Executive Law article 49-B. However, assuming arguendo that this court should find to the contrary, any resulting violations should not result in suppression.
Insofar as a court should avoid deciding a constitutional issue if there is a nonconstitutional ground upon which the motion may be decided (see e.g. Matter of Beach v Shanley, 62 NY2d 241, 254 [1984]), this court will first address the parties’ contentions regarding the applicability of CPL 160.50 and Executive Law article 49-B.
L
CPL 160.50 provides in relevant part that “[u]pon the termination of a criminal action or proceeding against a person in favor of such person, * * * the record of such action or proceeding shall be sealed * * *” and that "every photograph of such person and photographic plate or proof, and all palm-prints and fingerprints taken * * *, shall forthwith be * * * either destroyed or returned to such person * * (CPL 160.50 [1] [a].)
The statute goes on to state that “all official records and papers, * * * relating to the arrest or prosecution, * * * on file with the division of criminal justice services, any court, police agency, or prosecutor’s office shall be sealed and not made available to any person or public or private agency” (CPL 160.50 [1] [c] [emphasis supplied]).
As a starting point, it is the People’s position that the disposition of the DNA profile created from the 1997 case is not covered by CPL 160.50 and that once the DNA sample was processed in that case, and, as a matter of course, placed in the OCME’s local database, there was and is no legal impediment to it remaining there.
The People emphasize that CPL 160.50, which addresses the return and destruction of fingerprints, palmprints and photographs, was not meant to be all inclusive, but rather is limited to those items listed. Moreover, the People posit that the Medical Examiner’s records regarding DNA profiles are not part of the official court file since the OCME is an entity separate and apart from the Division of Criminal Justice Services, the court, any police agency, or prosecutor’s office.
The People stress that, in any event, even where there is a clear violation of CPL 160.50, suppression is not required (see, People v Dozier, 131 AD2d 587 [1987], lv denied 70 NY2d 711 [1987]; People v Patterson, 78 NY2d 711 [1991]).
The defendant argues that insofar as this DNA profile was generated from the investigation and/or prosecution of the *23 1997 case and does constitute identification evidence of sorts in the case, it should be included by extension under CPL 160.50 (1) (a) (photographs, photographic plates or proofs and all palm-prints and fingerprints). In any event, he argues that these DNA profiles do constitute “official records and papers” (see, CPL 160.50 [1] [c]). The defendant emphasizes that it is the intent of the Legislature, upon termination of a criminal action in favor of a defendant, to restore him to the status he occupied prior to arrest and prosecution, and that his arrest and prosecution “shall be deemed a nullity” (see, CPL 160.60).
Further, Midgley contends that the collection of blood samples, particularly for purposes of DNA profiling, is more rigidly controlled than the taking of fingerprints, palmprints and photographs which may be obtained upon arrest (CPL 160.10). Therefore, in order to obtain a blood sample or other corporeal evidence, the People must establish inter alia probable cause to believe the suspect has committed a crime and that there is a “clear indication” that relevant material evidence will be found (see, Matter of Abe A., 56 NY2d 288, 291 [1982]). Additionally, the court must then weigh the reasons for obtaining the blood sample or other corporeal evidence specimen against the suspect’s constitutional right to be free from bodily intrusions before granting such an order (id. ). Even upon the filing of an indictment or an accusatory instrument, a blood sample may be taken from a defendant, subject to constitutional limitations, only upon an order pursuant to a motion made on notice (see, CPL 240.40 [2] [v]), which order may be subject to a protective order conditioning this discovery (see, CPL 240.50). Accordingly, the defendant contends that these additional constrictions, combined with the enactment of Executive Law article 49-B, implicates the Fourth Amendment and requires that the sealing of records of such evidence be treated differently, i.e., more stringently enforced and accorded greater deference, and ultimately, that the violation thereof is tantamount to a Fourth Amendment violation requiring suppression of the DNA profile and its fruits in the instant matter.
In addressing first the applicability of CPL 160.50 to the facts at bar, this court finds that, insofar as DNA evidence is not specifically mentioned in this statute, it is not the place of this court to expand the statutory provisions to include DNA and further, to hold that DNA be treated differently and thereby warrant a greater remedy for the improper release of DNA records. Additionally, consistent with the holdings of People v Washington (86 NY2d 189, 192-193 [1995]) and People *24 v Stern (270 AD2d 118, 119 [2000], lv denied 95 NY2d 893 [2000], application for writ of coram nobis denied 292 AD2d 881 [2002]), this court finds that the OCME is not a police agency or law enforcement agency, nor is it deemed a part of the District Attorney’s office.
In any event, even if the blood sample test results do fall within the ambit of CPL 160.50, the violation thereof would not necessarily warrant suppression. In a case where a photo, which originated from a matter which was subsequently sealed, was used in an unrelated photographic identification procedure, the Second Department found that the use of the photograph did not require suppression of the complainant’s identification of the defendant (People v Dozier, supra, 131 AD2d at 588). The Court there stated that the underlying purpose of CPL 160.50 was “to remove the stigma of alleged criminal activity from an accused who was acquitted * * * and to restore the former defendant to the status he occupied before the arrest and prosecution and was not intended to ‘immunize a defendant from the operations of a law enforcement official’s investigatory display of a photograph’ ” (id. [citations omitted and emphasis supplied]).
This court finds that the matter at bar is analogous to the use of the photo in Dozier as, here too, an item previously lawfully[1] obtained, which could serve to identify the defendant as a suspect in or as the perpetrator of the instant rape offenses, had been employed in the investigative phase of this case.
Several years after Dozier, the Court of Appeals, in People v Patterson (78 NY2d 711 [1991]), did have occasion to address the question of the remedy for a violation of CPL 160.50. Defendant Patterson was identified in a photographic array containing a photo from a prior unrelated and dismissed case which photo was not returned to him, despite a court order sealing the file. The Patterson Court found that there had been a violation of CPL 160.50, yet, nevertheless, did not find that suppression of the in-court identification testimony was required. That Court indirectly criticized the holding of the Dozier Court, indicating that it found “no authorization in [CPL 160.50] for the use in a law enforcement agency’s investigatory procedures of a photograph retained in violation thereof’ (id. at 714 [citations omitted]); nonetheless, the Patterson Court concluded that “a statutory violation such as this does not warrant suppression of the identification testimony” (id.).
*25 Moreover, in answer to the defendant’s claim that this violation implicated constitutional rights, our High Court stated, “[although CPL 160.50 was violated, that violation did not infringe upon any constitutional right of the defendant sufficient to warrant invocation of the exclusionary rule” (id.). On the contrary, the Patterson Court found that the legislative history of this statute did “not at all support an intent on the part of the Legislature to create a constitutionally derived right” (id. at 716). In that Court’s view, “[t]o require the remedy of suppression for a violation of CPL 160.50,. without more, would impermissibly expand the exclusionary rule, and would be inappropriate, particularly where * * * the violation had no bearing on the reliability of the identification process and no relevance to the determination of defendant’s guilt or innocence at his trial” (id. at 717-718).
The Court of Appeals reiterated its Patterson holding in Matter of Charles Q. v Constantine (85 NY2d 571, 574-575 [1995]), a case in which that Court determined that evidence obtained through an erroneous unsealing order need not have been excluded from a disciplinary hearing and that its admission into evidence thereat did not require annulment of the respondent’s determination.
Further, it has been held that suppression does not lie for a claimed misuse by law enforcement of a blood sample and the results of its chemical analysis where the original blood sample was lawfully obtained. As the Second Department held in People v King, “once a person’s blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample” (232 AD2d 111, 117 [1997] [affg 161 Misc 2d 448 (1994)], lv denied 91 NY2d 875 [1997]). It was the view of the King Court that “there are no constitutional provisions or legal precedents ‘concerning the disposition of a blood sample, lawfully seized, [which] would immunize the donor from the consequences of its use in unrelated police investigations’ (161 Misc 2d, supra, at 453; cf., People v Dozier, 131 AD2d 587 [1987])” (232 AD2d at 118).
In King, a blood sample had been drawn from the defendant, upon a showing of probable cause, in connection with the investigation of an August 1991 rape case, but the sample ultimately was employed in a May 1991 rape case and resulted in a DNA match between the defendant and the evidence recovered in the May 1991 case. Both the County Court and the Appellate Division in King found that it was not improper *26 to use the blood drawn in the August 1991 case in the investigation/prosecution of the May 1991 case, so long as the original order had been issued upon probable cause, which both courts so found.
As was stated in King but applies with equal force in the matter at bar, “ [t]his court is unaware of, and the defendant does not cite, any authority which supports the proposition that probable cause must be shown anew for each subsequent use to which a blood sample might be put once it has been lawfully taken” (People v King, 232 AD2d at 115, quoting 161 Misc 2d at 453).
The defendant attempts to distinguish the King case by asserting that the two rape cases being investigated therein (May and August 1991) were connected[2] and that the sample drawn from King was contemporaneously tested against the evidence in both cases. This court, however, observes that King is actually quite similar to the matter at bar, namely, that blood drawn upon a showing of probable cause in connection with the investigation and/or prosecution of one matter was ultimately employed in another case to identify the suspected perpetrator.
Accordingly, assuming arguendo that CPL 160.50 even applies to DNA evidence, upon application of the holding of the King case to the matter at bar, the court concludes that suppression pursuant to CPL 160.50 does not here lie.
IL
The defendant further contends that suppression is mandated by virtue of the rights conferred upon him by Executive Law article 49-B. Meanwhile, the People contest that this statute even applies to the local DNA database.
Executive Law article 49-B, enacted in 1994, established a central state DNA database (state DNA identification index), whereby persons convicted[3] of certain felonies are required to provide a DNA sample for placement in the state DNA *27 database (Executive Law § 995 et seq.). In the case of a reversal, vacatur, or pardon, the DNA record[4] of such person shall be expunged from the state index, and such person may further apply for an order directing the expungement of his/her DNA record and all samples and DNA test results used in the investigation or prosecution of the case in which the conviction is overturned (Executive Law § 995-c [9]). Likewise, a person whose DNA sample has been provided in connection with the investigation or prosecution of a crime may also apply for an order of expungement of his/her DNA records, samples, and test results in the event of an acquittal or nonprosecution of the criminal case (id.).
The statute additionally governs the dissemination of DNA information under various circumstances and provides a penalty for violations thereof. Thus, the statute provides that, with the exception of DNA records and test results properly used in a criminal proceeding or with the subject’s consent (see, Executive Law § 995-d [2], [1], respectively), “[a] 11 records, findings, reports, and results of DNA testing performed on any person shall be confidential and may not be disclosed or redisclosed without the consent of the subject of such DNA testing * * *” (Executive Law § 995-d [1]).
One who violates the “Confidentiality” provisions of the statute (Executive Law § 995-d) through the unauthorized disclosure, use, or receipt of DNA information or who tampers with DNA samples “shall be guilty of a class E felony” (Executive Law § 995-f).
Insofar as the defendant’s profile is not, and has never been, contained in the state’s central DNA database, but rather, was only in the OCME’s local database, the People contend that Executive Law article 49-B is inapplicable here.
The court finds that the bulk of the statute’s provisions do not apply to the situation at bar since the defendant has no “DNA record” on file with the state’s central DNA database. Further, it does not appear that the defendant has ever sought a court order expunging any records containing his DNA infor *28 mation as contemplated under Executive Law § 995-c (9). Thus, although the defendant maintains that his 1997 DNA profile “should have been completely expunged,” since these provisions of the statute are not self-effectuating, it was incumbent upon the defendant to apply for an order of expungement (see, Executive Law § 995-c [9] Ob]). However, there is no assertion herein that any such application was ever made or that an order of expungement of the 1997 DNA profile was issued. Hence, there can be no violation of this provision in the matter at bar.
While the defendant contends that there has been a violation of the “Confidentiality” provisions of the statute by the New York City Police Department (NYPD) and by the District Attorney in utilizing his 1997 DNA profile for comparison with the DNA evidence in the instant case, his reliance on Executive Law § 995-d is unavailing to his claim for suppression. There is nothing in the statute which provides for such a remedy for the misuse or improper dissemination of DNA information in the context of a criminal prosecution. Thus, this court holds that regardless of whether or not either the NYPD or the District Attorney[5] violated this statute by making use of the 1997 DNA profile, any such infraction of the “Confidentiality” provisions of the statute does not give rise to the remedy of suppression. In this regard this court concludes, as urged by the People, that any violation of the provisions of article 49-B of the Executive Law is not intrinsically or qualitatively different from a violation of CPL 160.50, which, as discussed at length above, does not require the remedy of suppression of the allegedly misused evidence nor of the fruits thereof.
III.
As noted above, it is the defendant’s contention that the failure to seal, destroy and expunge all records of the 1997 DNA profile as well as the use of such records and/or the reuse of the original blood sample or its analysis, any or all of which led to his arrest in the instant matter, deprived him of due process and of equal protection of the law, and also deprived him of rights and protections to which he is entitled under the laws of New York.
The defendant’s claims, thus, relate to the reuse of his blood sample results. He has failed, however, to demonstrate *29 how the Fourth Amendment or other constitutional rights are implicated or revived upon the dissemination of the results of the original blood analysis for DNA profiling.
As stated above, but which bears repeating — any Fourth Amendment concerns relate to the intrusion[6] surrounding the gathering of the original blood sample; however, once such a sample is lawfully obtained, the defendant “can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample” (People v King, supra, 232 AD2d at 117), and thus the defendant herein has no viable constitutional claims regarding any further disposition of the sample.
Any constitutional infirmity which could exist regarding the defendant’s DNA profile would relate to the manner in which the original order for the extraction of the defendant’s blood in 1997 was sought and the basis upon which it was granted. However, the defendant has not raised any Fourth Amendment or due process claims to the taking of the original blood sample upon this motion. Accordingly, the defendant’s constitutional claims herein must be rejected.
In conclusion, the defendant’s suppression application is, respectfully, denied in all respects.

. The defendant has not raised any direct claim herein contesting the lawfulness of the original blood order.

. There is no showing that the two cases were connected by any distinctive modus operand! Rather, there was a strong showing of probable cause to believe that King was the perpetrator of the August rape/robbery, and the police had contacted the District Attorney’s office (of Westchester County) to “coordinate” the two rape investigations (perhaps because the perpetrator descriptions were similar and the perpetrator was so young — 14 to 15 years old). However, admittedly, the People never had independent probable cause regarding the May rape/robbery to seek a blood order for King in that case.

. Given the assertions of both the defense and the People, for the purposes of this analysis, the court will assume that the defendant was *27 completely acquitted of all charges in the 1997 case and that no further prosecution of any offenses arising therefrom is possible.

. “ ‘DNA record’ means DNA identification information prepared by a forensic DNA laboratory and stored in the state DNA identification index for purposes of establishing identification in connection with law enforcement investigations or supporting statistical interpretation of the results of DNA analysis. A DNA record is the objective form of the results of a DNA analysis sample.” (Executive Law § 995 [8].)

. While the defendant also charges the OCME with violating various provisions of Executive Law article 49-B (by virtue of the maintenance of its local DNA database and by its use of his 1997 DNA profile to match him to the September 2001 incident), there is no basis for this court to find that any such alleged infractions by the OCME should require suppression herein.

. “The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State * ** * [T]he Fourth Amendment’s proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.” (Schmerber v California, 384 US 757, 767-768 [1966].)