People v Sanchez (2024 NY Slip Op 24081)

[*1]

People v Sanchez

2024 NY Slip Op 24081

Decided on March 11, 2024

Criminal Court Of The City Of New York, New York County

McDonnell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 11, 2024
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Alain Sanchez, Defendant.

Docket No. CR-030528-22NY

Steven Epstein, Barket, Epstein, Kearon, Aldea & LoTurco, LLP
Assistant District Attorney Alyssa Ramirez, New York County District Attorney's Office

Paul McDonnell, J.

Defendant stands charged with three counts of operating a motor vehicle while under the influence of alcohol (VTL §§ 1192 [1], [2], [3]), and related charges. He moves for an order invalidating the People's Certificate of Compliance (COC). He also moves to dismiss the accusatory instrument on the ground that he has been denied a speedy trial pursuant to CPL 30.30, and for other forms of relief.
Operating a motor vehicle while under the influence of alcohol in violation of VTL §1192 [2] and [3] is a misdemeanor punishable by a sentence of up to one year imprisonment (VTL § 1193 [1] [b]). Accordingly, absent excludable time, the People must declare their readiness for trial within 90 days of commencement of the criminal action (CPL 30.30 [1] [b]). A criminal action commences with the filing of an accusatory instrument, but computation for speedy trial purposes commences on the next day (People v Stiles, 70 NY2d 765 [1987]).
Both sides agree that the People are charged with the period from November 19, 2022, when the accusatory instrument was filed, until February 17, 2023, when the People provided discovery materials and filed and served their initial COC and COR. (Subtotal—90 days).[FN1]

In dispute is the validity of these certificates. The People claim that filing the COC and COR tolled any further accrual of speedy trial time. Defendant argues that the People have failed to turn over all required discovery materials and, therefore, the COC and COR, in addition to any subsequent certificates and statements of readiness, are invalid. Specifically, defendant claims that the People made improper redactions to certain materials, failed to disclose all required law [*2]enforcement disciplinary records, and turned over an incomplete set of calibration and certification records.
CPL 245.20 [1] requires the People to make a diligent, good faith effort to ascertain the existence of discoverable materials, and where they exist, cause them to be made available for discovery. The statute sets forth twenty-one categories of material that are subject to disclosure, and there is a presumption in favor of disclosure (CPL 245.20 [7]).
Significantly, all evidence and information related to the prosecution of a charge in the possession of any New York state or local police, or law enforcement agency are deemed to be in the possession of the prosecution, and the prosecutor is responsible for ensuring that a "flow of information" exists from law enforcement agencies to the prosecution so that disclosure can be adequately provided to the defendant (CPL 245.55). The statute explicitly provides that "upon request by the prosecution, each New York state and local law enforcement agency shall make available to the prosecution a complete copy of its complete records and files related to the investigation of the case or the prosecution of the defendant for compliance with this article" (CPL 245.55 [2]). For material that is not within their possession, custody or control, the statute requires the People to make a diligent, good faith effort to ascertain the existence of discoverable materials, and where they exist, cause them to be made available for discovery. But the People are not required to obtain by subpoena duces tecum material or information which defendant may thereby obtain (CPL 245.20 [2]).
Once the People have satisfied their automatic discovery obligation, they must file and serve upon defendant a COC in accordance with CPL 245.50. If the People provide additional discovery after filing a COC, they must file a supplemental certificate detailing the additional discovery material and the basis for the delayed disclosure "so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50 [1], 245.60). A supplemental certificate of compliance is for pre-existing evidence or information that only came into the prosecution's possession or constructive possession after a valid certificate of compliance was filed or where the additional discovery did not exist at the time of the filing of the original certificate of compliance (CPL 245.50 [1-a]). The statute also provides for modifications for the time periods for discovery upon a showing of good cause (CPL 245.70 [2]). Additionally, if either party is concerned about the nature of any materials, they may request a protective order pursuant to CPL 245.70 [1].
CPL 245.20 [1] [c], [d] and [6] - Redactions
The accusatory instrument alleges that defendant, while intoxicated, crashed his vehicle into an unoccupied parked car, causing damage to both vehicles. Defendant claims that the People improperly redacted information in certain discovery materials beyond what is permitted pursuant to CPL 245.20 [1] [c], [d] and [6].[FN2]
The People respond that information redacted in the Driver Safety Record and Out of State Registration Search inquiries was personal information for individuals not related to this case. These documents were generated when police conducted [*3]a search using defendant's name and received information for individuals with similar names. The next challenge is to discovery related to the other vehicle's owner to which the People state they only redacted that individual's home address. Finally, the People indicate that they complied with the statute by providing the name, tax number and command for the arresting officer. Based upon these representations the court is satisfied that the prosecution did not improperly redact any information in the challenged documents. Defendant's motion to invalidate the COC on this ground is denied.
CPL 245.20 [1] [k] - Impeachment material
CPL 245.20 [1] [k] codifies the People's obligation to disclose information favorable to defendant under Brady v Maryland, (373 US 83 [1963] and Giglio v United States, (405 US 150 [1972] and their progeny (see also, New York State Rules of Professional Conduct, Rule 3.8 [b], William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Criminal Procedure Law 245.10 [citing the New York State Unified Court System's Administrative Order of Disclosure]). In relevant part, CPL 245.20 [1] [k] requires the People to provide "all evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to impeach the credibility of a testifying prosecution witness . . . [i]nformation under this subdivision shall be disclosed . . . irrespective of whether the prosecutor credits the information" (CPL 245.20[1][k][iv]).
As part of their initial disclosure the People provided summaries of misconduct allegations in disclosure advisory forms (DAF), and Civilian Complaint Review Board (CCRB) histories for testifying police witnesses, Police Officer Carlos Montoya and Police Officer Krystina Poloni. They also turned over a Disclosure Notice for Officer Poloni.[FN3]
Defendant challenges the validity of the People's compliance since they have not turned over any underlying documents related to the allegations. The People state that each DAF shows there were no substantiated, partially substantiated, unsubstantiated or pending NYPD allegations against either officer. They claim to have complied with their discovery obligation based upon their interpretation of the statute.
This court has previously interpreted the statute as requiring the People to provide all underlying materials for both substantiated and unsubstantiated allegations of misconduct (People v Barralaga, 73 Misc 3d 510 [Crim Ct, NY County 2021]), a view shared by numerous other courts [FN4]
(see People v Jackson, 79 Misc 3d 832 [Crim Ct, NY County 2023] [citing relevant cases]). Generally, disciplinary records involving police officers take one of two forms. Civilian complaints against police officers are adjudicated by the CCRB. Complaints made by police personnel are adjudicated by the Internal Affairs Bureau (IAB) of the police department. Following a finding of substantiated or unsubstantiated misconduct, the CCRB must turn over the results of their investigation to the Police Department (Civilian Complaint Review Board, [*4]38-A RCNY § 1-33[c and d]). However, CCRB is an independent civilian agency, not a law enforcement agency, and their records are equally available to both parties. Therefore, unless CCRB has provided documents to the police or prosecution their records are not deemed to be in the actual or constructive possession of the People. The CCRB history for Officer Poloni shows a disposition of "exonerated" as to all charges of misconduct. The CCRB history for Officer Montoya shows a disposition of "complainant uncooperative" as to two cases involving alleged misconduct. The remaining two cases against Officer Montoya have no disposition. Since the discovery shows no substantiated or unsubstantiated allegations of misconduct against either officer, the People were not required to provide any underlying records. Defendant's challenge to the validity of the COC on this ground is denied.
CPL 245.20 [1] s] — Scientific testing records [FN5]

Following the defendant's arrest, the police measured his blood alcohol content (BAC) by analyzing his breath using a breath analysis instrument — the "Intoxilyzer Model 9000" machine. Breathalyzer machines are regulated by the Department of Health, and each machine used by law enforcement agencies, such as the "Intoxilyzer Model 9000" machine, must be on a list of approved machines (see 10 NYCRR § 59.4.) The regulations also require the police to calibrate the machine each time a suspect's breath is tested. This is done by first purging the machine of air and then conducting a test of the machine using a reference sample, commonly referred to as a simulator solution, that has been previously tested and certified as having .10% of alcohol. The machine must correctly evaluate the test sample within a .01% margin of error or else the machine is considered out of calibration.
In addition to calibrating the machine at the time a suspect is tested, Department of Health regulations require that each machine be calibrated "at a frequency as recommended by the device manufacturer or, minimally, annually" (see 10 NYCRR § 59.4 [c]). To comply with this mandate, the NYPD independently calibrates each Breathalyzer machine every six months. For these semi- annual calibrations, the NYPD uses multiple reference solutions at various concentrations of alcohol. For example, the Intoxilyzer Model 9000 used in the present case was calibrated within the six months prior to the defendant's arrest using four reference samples: .02%, .04%, .10% and .30 % of alcohol. A machine that does not accurately reflect the amount of alcohol in the reference solution within a .01% margin of error is considered out of calibration.
Gas chromatography is the process used to certify that the reference standards used in the calibration of the machines are accurate, i.e., that the simulator solutions labeled .02%, .04%, .10% or .30% are what they purport to be. Gas chromatography records are comprised of a series of graphs and charts that reflect whether the simulator solutions were properly tested to ensure [*5]accuracy. It is these records, some of which have not been disclosed to the defense, that are at issue in this case.
There is no dispute that the simulator solutions used in this case were manufactured and certified as accurate by Guth Laboratories, Inc., a Pennsylvania corporation that is not an approved vendor for New York. These simulator solutions are purchased through a third-party company, CMI, Inc., a Kentucky corporation that manufactures and services the Intoxilyzer 9000 machines (see People v Colon, 80 Misc 3d 1219[A] [Crim Ct., NY County 2023]). It is also not disputed that the .10% solution that is used to calibrate every Breathalyzer machine is independently re- analyzed by the New York State Police Lab (NYSPL). According to the People, this is done to ensure that Breathalyzer test results will be admissible at a hearing or trial as a business record under CPLR 4518 [c]. When re-analyzing the .10% reference solution, the NYSPL generates a new set of chromatography records that are routinely disclosed to the defense. However, the NYSPL does not re-analyze any of the other reference standard solutions used in the semi-annual calibration of Breathalyzer machines conducted by the NYPD. Thus, in most cases the People do not have in their actual possession any gas chromatography records for the .02%, .04% or .30% simulator solutions used for the semi-annual calibration of the Intoxilyzer 9000 machines. Those gas chromatography records are in the possession of Guth Laboratories in Pennsylvania.
Complicating the issue is that over a year ago the People explored securing gas chromatography records for the reference samples supplied by Guth Laboratories through CMI. According to the People, they purchased gas chromatography records for nine lots of samples. Therefore, for any machines calibrated with one or more of those nine lots, the People do have gas chromatography records in their possession and the People concede that as to these nine lots, they have an obligation to disclose the gas chromatography records.[FN6]
However, the People argue that purchasing the gas chromatography records generated by Guth Laboratories was expensive ($4,275 for the nine lots), took over four months to receive and was not required under the discovery statute. Complicating the issue even further is that the New York State Division of Criminal Justice Services (DCJS) independently purchases simulator solutions lots of .08%, .10%, and .18% for calibration of machines that are not used by the NYPD. Those lots are re-analyzed for DCJS by the NYSPL, and gas chromatography records are generated for those lots. DCJS places all gas chromatography records and certifications made by the NYSPL on a public website for the use of anyone interested.
The caselaw applying CPL 245.20[1][s] to gas chromatography records of Breathalyzer machines has been widely inconsistent (compare People v Colon, 80 Misc 3d 1219[A] [Crim Ct., NY County 2023]; People v Sherman, 80 Misc 3d 557 [Suffolk District Ct. 2023]; People v Thomas, 80 Misc 3d 1227[A] [Crim Ct., Bronx County 2023]; People v Quiroz, 77 Misc 3d [*6]1213[A] [Crim Ct., Queens County 2022]; People v Alvarez, 71 Misc 3d 1206[A] [Crim Ct., Queens County 2021]; People v Stancu, [Crim. Ct., Queens County, April 3, 2023, Novillo, J., Dkt. CR-020401-21QN]. This may be due, in part, to the differing availability of gas chromatography records in each of those cases. It may also be due to the lack of particularized information before those courts regarding the availability of the records in issue.
It is clear that neither the People nor law enforcement physically possess the gas chromatography records not disclosed to the defendant, nor are they in their constructive possession (see e.g., People v Washington, 86 NY2d 189 [1995]). Those records are possessed by Guth Laboratories, an independent out-of-state laboratory with no meaningful ties to New York. Nonetheless, the discovery statute provides that "the prosecutor shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control; provided that the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain" (CPL 245.20 [2]).
Recently, in People v Bay, the Court of Appeals had occasion to interpret the general contours of the discovery statute (2023 NY Slip Op. 06407, 2023 WL 8629188 (2023). As the court noted, "the key question in determining if a proper COC has been filed is whether the prosecution has 'exercis[ed] due diligence and made reasonable inquiries to ascertain the existence of material and information subjection to discovery' " (People v Bay, at p 5, quoting CPL 245.20[2]). The court recognized that whether the prosecutor has exercised due diligence is fundamentally case-specific and turns on the circumstances of each case. Nonetheless, the court identified several factors that a court should consider when evaluating due diligence: the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements; the volume of discovery provided and outstanding; the complexity of the case; how obvious any missing material would likely have been to a prosecutor exercising due diligence; the explanation for any discovery lapse; and, the People's response when apprised of any missing discovery. It is the People's burden to establish that they exercised due diligence and made reasonable inquiries to secure and disclose discoverable material and information. The defendant has no burden to show prejudice. Prejudice only comes to bear on the case where the People have belatedly disclosed material and information, and the defense seeks a sanction (See also People v. Gaskin, 214 AD3d 1353 (4th Dept 2023)). Finally, to establish due diligence, the prosecutor must provide sufficient facts upon which a finding can be made.
Here, the prosecutor has provided the court with adequate facts, and it is plain that the prosecution has only two avenues to secure gas chromatography records that relate to the bi-annual calibration of Breathalyzer machines used in New York City: they can purchase them from Guth Laboratories through CMI or demand that the NYSPL re-analyze all simulator solutions used in calibration and then turn over the gas chromatography records generated by NYSPL in their re-analysis. While the discovery statute expressly provides that the prosecution must disclose gas chromatography records involving calibration of Breathalyzer machines, the obligation falls short of requiring the prosecution to use its subpoena power to do so where the records are equally available to the defendant.
The defendant argues that the prosecutor should require the NYSPL to re-analyze all reference samples from Guth Laboratories in order to provide the defense with gas chromatography records. The statute, however, does not support that interpretation. Nothing in [*7]CPL Article 245 requires the prosecution to create discoverable material so that it can be disclosed to the defendant. It is even unclear whether a local district attorney has the power to compel the NYSPL to conduct such tests. But even if it had that power, the People's due diligence obligation does not extend to creating records for the purpose of discovery. Instead, the discovery scheme is designed to ferret out relevant material already in existence. I therefore find that the People are not required to submit all reference samples for retesting to create gas chromatography records for disclosure to the defendant under CPL 245.20 [1] [s].
Turning to whether the People are required to purchase Guth Laboratories' gas chromatography records for disclosure to the defendant, I find that the statute does not require that extraordinary level of diligence and effort. CPL 245.20 [2] provides that the prosecutor must use due diligence to acquire relevant material, short of using its subpoena power. The effort necessary to acquire relevant material is clearly pertinent, for if the prosecutor can retrieve such information or material at minor cost or effort, it must shoulder that cost and effort. Administrative costs are to be anticipated in providing discovery materials to the defendant and prosecutorial offices must budget those costs accordingly. On the other hand, the Legislature could not have envisioned that due diligence would require prosecutor's offices to undertake whatever cost is necessary to retrieve discoverable material that is equally available to the defense. The Legislature gave context to the due diligence requirement by expressly providing that the prosecution's effort will necessarily fall short of its use of subpoena power. Accordingly, the manner necessary to acquire relevant material must be considered in that context. On balance, then, although the records are available at considerable cost and delay, CPL 245.20 [2] does not mandate that the prosecution spend thousands of dollars to produce the materials for the defendant. The prosecution was therefore permitted to file a valid COC without disclosing the gas chromatography records of Guth Laboratories for the simulator solutions not in prosecution possession. Of course, the gas chromatography records previously purchased, as well as those created and possessed by the NYSPL must be disclosed in this case and all cases going forward. Moreover, the court takes no position on whether future contracts the State enters with CMI for purchase of Breathalyzer machines should include provisions to acquire gas chromatography records of all reference samples. Whether law enforcement can do so with costs more appropriately falling within typical administrative costs will await future consideration. The People are on notice that they will undoubtedly be called on to make a record of any negotiations and any costs that would be required for them to acquire gas chromatography records. While the statute does not require the People to expend critical resources to acquire out-or-state discovery materials, neither can it avoid providing the defense with relevant material if it can do so with relative ease.
The COC and COR having been found valid; the People are only charged with 90 days of delay. The motion to dismiss on speedy trial grounds is therefore denied.
Motions to Suppress
Defendant's motion to suppress statements is GRANTED to the extent that a Huntley/Dunaway hearing is ordered.
Defendant's motion to suppress the results of any chemical tests is GRANTED to the extent that a Johnson hearing is ordered to determine whether the police had probable cause to request defendant's breath sample.
The foregoing constitutes the opinion, decision and order of the court.
Dated: March 11, 2024
New York, New York
PAUL McDONNELL, J.C.C.

Footnotes

Footnote 1:The People improperly calculate this period as 89 days instead of 90 days. In computing the time period under CPL 30.30, "the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning" (General Business Law § 20; People v. Stiles, 70 NY2d 765, 767, 514 N.E.2d 1368, 1369 [1987]).

Footnote 2:CPL 245.20 [1] [c] mandates the People to provide certain contact information for civilian witnesses but does not require the disclosure of physical addresses. CPL 245.20 [1] [d] requires the People to provide the name and work affiliation of all law enforcement witness, other than undercover officers. CPL 245.20 [6] permits either party to redact social security and tax numbers from disclosures.

Footnote 3:On March 17, 2023, the People turned over a disclosure notice for Officer Montoya and another copy of his CCRB history that was previously disclosed.

Footnote 4:Although some trial courts have interpreted the statute to require disclosure of underlying records for exonerated and unfounded allegations of misconduct (see e.g., People v Portillo, 73 Misc 3d 216 [Sup Ct, Suffolk County 2021]), this court declines to adopt this expansive reading of the statute (see People v Montgomery, 74 Misc 3d 551 [Sup Ct, NY County 2022]).

Footnote 5:CPL 245.20 [1][s] provides in relevant part as follows: In any prosecution alleging a violation of the vehicle and traffic law . . . all records of calibration, certification, inspection, repair or maintenance of machines and instruments utilized to perform any scientific tests and experiments, including but not limited to any test of a person's breath, blood, urine or saliva, for the period of six months prior and six months after such test was conducted, including the records of gas chromatography related to the certification of all reference standards and the certification certificate, if any, held by the operator of the machine or instrument . . . (emphasis supplied).

Footnote 6:The People received gas chromatography records from those nine lots several months after they filed their COC and COR, and during current motion practice. The People disclosed all nine lots to the defendant (three were evidently relevant to this case) several months after their receipt, but while the case was still in motion practice. Although the People have a continuing disclosure obligation (see CPL 245.60), their failure to timely disclose these records — acquired well after the filing of a valid COC and COR — does not invalidate those filings. Instead, the defense remedy is to move for an appropriate sanction for the late disclosure.