**UNITED STATES of America,**
**Appellee,**

**v.**

**Miguel FELIZ, Jose Cortina Perezo, aka "Jochi", Michael Mungin, aka "Mike", aka "Robert Robinson", Robert Brown, aka "Crazy Rob", aka "Raj", Stanley Davis, aka "Kirk", Defendants,**

Jose Erbo, aka "Pinguita", aka "Tito", aka "Miguel Garcia", Defendant–Appellant.

**Docket No. 02–1665–cr.**

United States Court of Appeals, Second Circuit.

Argued: July 14, 2005.

Decided: Oct. 25, 2006.

Richard D. Willstatter, Green & Willstatter, White Plains, NY, for Defendant–Appellant.

Helen V. Cantwell, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Karl Metzner, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Before: WESLEY, HALL, Circuit Judges, and TRAGER, District Judge.*

* The Honorable David G. Trager, United States District Court for the Eastern District of New

HALL, Circuit Judge:

Defendant-appellant Jose Erbo appeals his conviction in the United States District Court for the Southern District of New York (Baer, *J.*), following a jury trial, for racketeering activities, 18 U.S.C. § 1962(c), conspiring to violate racketeering laws, in violation of 18 U.S.C. § 1962(d), conspiring to commit and committing murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a), using and carrying firearms in connection with the murders and conspiracies to commit murder, in violation of 18 U.S.C. § 924(c), and conspiring to distribute and possess with the intent to distribute powder cocaine and crack, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846.

Erbo raises numerous challenges to his conviction and sentence, all but one of which we address in a summary order affirming the District Court. In this opinion we address Erbo's contention that the admission of autopsy reports against a defendant who has had no opportunity to cross-examine the author of the reports violates the defendant's rights under the Confrontation Clause as articulated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Because we conclude that autopsy reports are not testimonial within the meaning of *Crawford* and, thus, do not come within the ambit of the Confrontation Clause, we find no constitutional error in the admission of the autopsy reports.

## BACKGROUND

From at least 1991 until 1997, Erbo led a violent cocaine distribution organization in New York City known as "Tito's Crew." Erbo and other members of Tito's Crew distributed large amounts of crack and cocaine and committed multiple murders. On February 4, 1999, the Government charged Erbo and others in a seventeen-count indictment, which included charges of racketeering as well as murder, and conspiracy to commit murder, in aid of racketeering. In September 1999, he was convicted on weapons charges in the Dominican Republic and sentenced to two-years' imprisonment. Upon his completion of that sentence in April 2001, the Dominican Republic surrendered Erbo to the United States pursuant to an extradition request. He subsequently pled not guilty, and trial commenced on May 9, 2002.

In order to establish the manner and cause of death for each of Erbo's victims in the charged homicides, the Government offered nine autopsy reports through the testimony of Dr. James Gill, an employee of the Office of the Chief Medical Examiner of New York ("Medical Examiner's Office"). Dr. Gill had not conducted any of the autopsies detailed in the reports. Erbo, therefore, objected to the admission of the reports on the grounds that they were inadmissible hearsay and violated his right to confrontation under the Sixth Amendment. The District Court admitted the autopsy reports over that objection, concluding that the Government had established a proper foundation for their admission as business records. Using the recorded observations in the autopsy reports, Dr. Gill testified before the jury as to the causes of death of the nine victims.

On May 23, 2002, the jury found Erbo guilty of the following: (i) one count of racketeering, in violation of 18 U.S.C. § 1962(c); (ii) one count of conspiracy to violate racketeering laws, in violation of 18 U.S.C. § 1962(d); (iii) three counts of conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C.

York, sitting by designation.

§ 1959(a)(5); (iv) three counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and (2); (v) three counts of using and carrying a firearm in connection with a crime of violence, in violation of 18 U.S.C. §§ 924(c) and (2); and (vi) one count of conspiracy to distribute and possess with the intent to distribute powder cocaine and crack, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. The District Court sentenced Erbo principally to six consecutive terms of life imprisonment, to be followed by a mandatory and consecutive 45–year term of imprisonment.

In this opinion, we address Erbo's argument that the District Court erred in admitting the autopsy reports. Although Erbo does not challenge the District Court's determination that the autopsy reports were business records, he maintains that their admission violated his Sixth Amendment rights because he had no opportunity to cross-examine the medical examiners who prepared them. Well before *Crawford* was decided, we considered this precise question in *United States v. Rosa*, 11 F.3d 315, 333 (2d Cir.1993), and, guided in part by *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), we found no Confrontation Clause violation. Erbo contends, however, that neither the result nor the rationale of *Rosa* survives the Supreme Court's decision in *Crawford*. After Erbo appealed, but before briefs were submitted to this Court, *Crawford* held that the Confrontation Clause prohibits the admission of out-of-court, "testimonial" statements against a criminal defendant, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. The Government argues Erbo suffered no Sixth Amendment violation because the autopsy reports, like all business records, are nontestimonial. Based in part on this Court's post-*Crawford* decision in *United States v. Saget*, 377 F.3d 223 (2d Cir.2004), Erbo counters that the District Court's admission of the autopsy reports violated his right to confrontation because the reports, regardless of their classification as business records, contain testimonial statements and he had no opportunity to cross-examine the medical examiners who prepared them.[1] We hold that the sole relevant inquiry under the Confrontation Clause is whether the autopsy reports are testimonial, and because we hold they are not, the District Court properly admitted them into evidence.

## DISCUSSION

### I. The Confrontation Clause Analysis, Before and After *Crawford*

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. Prior to *Crawford*, standards of reliability demarcated the boundaries of the Confrontation Clause's protections. Specifically, in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court held that an out-of-court statement of an unavailable hearsay declarant is constitutionally inadmissible unless it "bears adequate indicia of reliability." *Id.* at 66, 100 S.Ct. 2531 (internal quotation marks omitted). It went on to

---

1. Erbo does not argue that the medical examiners who authored the reports were available to testify. Having failed to raise this argument, it is deemed waived. *ABB Indus. Sys., Inc., v. Prime Tech., Inc.*, 120 F.3d 351, 360 n. 5 (2d Cir.1997). In any event, in light of our conclusion that the autopsy reports are not testimonial, the admissibility of the autopsy reports cannot be challenged under the Confrontation Clause regardless of whether the medical examiners were available.

hold that "[t]o meet that test, evidence must either fall within a 'firmly rooted hearsay exception' or bear 'particularized guarantees of trustworthiness.'" *Crawford*, 541 U.S. at 40, 124 S.Ct. 1354 (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531). Thus, under the *Roberts* line of cases, "[a]ny out-of-court statement was constitutionally admissible so long as it fell within an exception to the hearsay rule or, if that exception was not firmly rooted, the court found that the statement was likely to be reliable." *Saget*, 377 F.3d at 226.

*Crawford*, however, "substantially alter[ed] the ... existing Confrontation Clause jurisprudence," *Saget*, 377 F.3d at 226, announcing a per se bar on the admission of a class of out-of-court statements the Supreme Court labeled "testimonial" unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant regarding the statement. *Crawford*, 541 U.S. at 59, 68, 124 S.Ct. 1354; *United States v. Stewart*, 433 F.3d 273, 290 (2d Cir.2006); *United States v. Logan*, 419 F.3d 172, 177 (2d Cir.2005). *Crawford's* per se bar applies "regardless of whether [the testimonial] statement falls within a firmly rooted hearsay exception or has particularized guarantees of trustworthiness." *Saget*, 377 F.3d at 226 (citing *Crawford*, 541 U.S. at 68–69, 124 S.Ct. 1354). The Court reasoned that the Framers—at least where the out-of-court statements are testimonial—did not intend to "leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" *Crawford*, 541 U.S. at 61, 124 S.Ct. 1354; *see also id.* at 62, 124 S.Ct. 1354 ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty."). Rather, "[w]here testimonial statements are at issue, the only indicium of reliability suffi-

cient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68–69, 124 S.Ct. 1354.

This being said, an open question remains in light of pre-*Crawford* analysis of the admissibility of statements that are determined to be nontestimonial. In the wake of *Crawford* this Court assumed, and several of our sister circuits held, that the *Roberts* reliability analysis continued to govern the admissibility of nontestimonial statements. *See Summers v. Dretke*, 431 F.3d 861, 877 (5th Cir.2005); *United States v. Hinton*, 423 F.3d 355, 358 n. 1 (3d Cir.2005); *United States v. Brun*, 416 F.3d 703, 707 (8th Cir.2005); *United States v. Franklin*, 415 F.3d 537, 546 (6th Cir.2005); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004); *Saget*, 377 F.3d at 227; *see also Mungo v. Duncan*, 393 F.3d 327, 336 n. 7 (2d Cir.2004) (suggesting that "under *Roberts*, nontestimonial hearsay deemed unreliable is barred by the Confrontation Clause"). The Supreme Court, however, in *Davis* made clear that the right to confrontation only extends to testimonial statements, or, put differently, the Confrontation Clause simply has no application to nontestimonial statements. *See Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 2274, 165 L.Ed.2d 224 (2006) (holding that the limitation with respect to testimonial hearsay is "so clearly reflected in the text" of the Confrontation Clause that it "must ... mark out not merely its 'core,' but its perimeter").

It is through this new lens, *Crawford* as explicated by *Davis*, that we must examine the admissibility of the autopsy reports. Turning this lens on *Rosa*, it becomes clear *Rosa's* rationale—that the demands of confrontation are satisfied by the reliability of the proffered evidence—did not

survive *Crawford*.[2] In *Rosa*, we ruled simply that autopsy reports are admissible against a defendant who had no opportunity to cross-examine the medical examiner who prepared them. *Rosa*, 11 F.3d at 333 (citing *Roberts*, 448 U.S. at 65–66, 100 S.Ct. 2531). In reaching this decision, which preceded *Crawford*, we did not ask whether autopsy reports were testimonial. Instead, we based our decision on the reports' reliability, reasoning "the reported observations in [autopsy] reports bear sufficient indicia of reliability to satisfy the demands of the Confrontation Clause." *Id.* at 333. Now, after *Crawford* and *Davis*, indicia of reliability play no role in the Confrontation Clause analysis. Rather, the inquiry under the Confrontation Clause is whether the statement at issue is testimonial. If so, the Confrontation Clause requirements of unavailability and prior cross-examination apply. If not, the Confrontation Clause poses no bar to the statement's admission. Whether the admissibility of nontestimonial evidence also turns on an analysis of its reliability based on requirements rooted outside the rules of evidence, the particular guarantees of trustworthiness attendant to autopsy reports such as those at issue here and in *Rosa* make it unnecessary to resolve that question in this case.[3]

## II. Crawford and the Scope of "Testimonial" Evidence

The *Crawford* Court declined to "spell out a comprehensive definition of 'testimo-

nial.'" *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, but it did offer a number of observations that suggest the contours of that definition. First, the Court noted that both the historical background and text of the Confrontation Clause indicate that "the principal evil at which [it] was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." *Id.* at 50, 124 S.Ct. 1354. According to the Court, "the Sixth Amendment" and, presumably the term testimonial as well, "must be interpreted with this focus in mind." *Id.* at 50, 124 S.Ct. 1354. Consistent with that approach, the Court suggested that an "off-hand, overheard remark" would not be testimonial under the Sixth Amendment because "it bears little resemblance to the civil-law abuses the Confrontation Clause targeted." *Id.* at 51, 124 S.Ct. 1354. Along the same lines, the Court indicated that a statement produced through the "[i]nvolvement of government officers" and with an "eye towards trial" is testimonial because it "presents [a] unique potential for prosecutorial abuse—a fact borne out time and again through a history with which the Framers were keenly familiar." *Id.* at 56 n. 7, 124 S.Ct. 1354.

Second, the Court stated that "[v]arious formulations of th[e] core class of 'testimonial' statements exist": (1) " 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony

---

2.  Importantly, we note that neither *Crawford* nor *Davis*, nor do we by this opinion, call into question *Rosa's* holdings with respect to the admissibility of the autopsy reports in that case either as business records under FED. R. EVID. 803(6) or as public records under FED. R. EVID. 803(8). Moreover, as noted herein, we do not impugn *Rosa's* determination that autopsy reports of the sort presented there are reliable.

3.  As noted in *Rosa*, autopsy reports bear sufficient indicia of reliability by virtue of "the routine and repetitive circumstances" under which they are made and "the fact ... [they] are made contemporaneously with the report itself." *Rosa*, 11 F.3d at 333. In addition, the reports are made reliable by the existence of "statutorily regularized procedures" overseen by medical professionals. *Id.; see also* discussion of § 557 of the New York City Charter at Parts III and IV, *infra*.

that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' " *id.* at 51, 124 S.Ct. 1354, (quoting Brief for Petitioner at 23); (2) " 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' " *id.* at 51–52, 124 S.Ct. 1354 (quoting *White v. Illinois,* 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., concurring)); and (3) " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' " *id.* at 52, 124 S.Ct. 1354 (quoting Brief for Nat'l Assoc. of Criminal Def. Lawyers et al. as *Amici Curiae* at 3). Importantly, while noting that these three formulations "all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it," *id.,* the Court "found it unnecessary to endorse any of them, because 'some statements qualify under any definition,' " *Davis,* 126 S.Ct. at 2273 (quoting *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354).

Third, the Court provided several concrete examples of testimonial and nontestimonial statements. "Whatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. The Court reasoned that "[t]hese are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* In contrast, the Court stated that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in

furtherance of a conspiracy." *Id.* at 56, 124 S.Ct. 1354.

Relying on this final example, the Government argues that *Crawford* specifically excludes business records from the definition of testimonial. While this argument has superficial appeal, the Supreme Court's several examples of what constitute testimonial statements and this Court's subsequent discussion of that same issue requires us to probe why it is that a business record, such as the autopsy reports at issue here, is not also testimonial and subject to the Confrontation Clause. At the outset, we acknowledge that several courts have rejected arguments similar to the Government's, characterizing *Crawford's* reference to business records as dicta and requiring a case-by-case determination of whether the statements in the business records are testimonial. *See, e.g., State v. Crager,* 164 Ohio App.3d 816, 844 N.E.2d 390, 398–99 (2005) (refusing to adopt a per se exclusion of all business records from scrutiny under *Crawford* ); *People v. Mitchell,* 131 Cal.App.4th 1210, 32 Cal.Rptr.3d 613, 621 (2005) (stating that the *Crawford* Court did not intend that "all documentary evidence which could broadly qualify in some context as a business record ... automatically be considered non-testimonial").

### III. The Autopsy Reports Are Admissible as Business Records

█ We disagree with these courts, however, holding instead that testimonial statements within the meaning of *Crawford* and *Davis* would not qualify as business records under F<sub>ED</sub>. R. E<sub>VID</sub>. 803(6). Stated differently, we hold that a statement properly admitted under F<sub>ED</sub>. R. E<sub>VID</sub>. 803(6) cannot be testimonial because a business record is fundamentally inconsistent with what the Supreme Court has suggested comprise the defining character-

istics of testimonial evidence.[4]

We look first to the definition of a business record. Rule 803(6) of the Federal Rules of Evidence defines a business record as:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation.

FED. R. EVID. 803(6). We know that because Rule 803(6) requires business records to be kept in the regular course of a business activity, records created in anticipation of litigation do not fall within its definition. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 n. 4 (4th Cir.2000) (noting that it "is well established that documents made in anticipation of litigation are inadmissible under the business records exception"). This Court has further construed Rule 803(6) to exclude records in criminal cases containing observations made by police officers or other law enforcement personnel. *See Rosa*, 11 F.3d at 331–32 (citing *United States v. Oates*, 560 F.2d 45, 70 (2d Cir. 1977)).

Because business records cannot be made in anticipation of litigation or include observations made by law enforcement personnel, they "bear[ ] little resemblance to the civil-law abuses the Confrontation Clause targeted." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354; *see also id.* at 50, 124

S.Ct. 1354 (stating that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused"). *Crawford* itself suggests that the very same characteristics that preclude a statement's classification as a business record are likely to render the statement testimonial. *See id.* at 56 n. 7, 124 S.Ct. 1354 (describing as testimonial, statements produced through the "[i]nvolvement of government officers" and made "with an eye towards trial"). Indeed, "[t]he essence of the business record exception contemplated in *Crawford* is that such records or statements are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are 'by their nature' not prepared for litigation." *People v. Durio,* 7 Misc.3d 729, 794 N.Y.S.2d 863, 867 (N.Y.Sup.Ct.2005) (quoting *Crawford*, 541 U.S. at 56, 124 S.Ct. 1354); *see also United States v. Cervantes–Flores*, 421 F.3d 825, 834–35 (9th Cir.2005) (holding that a document analogous to a business record was not testimonial, in part, because it did not "resemble the examples of testimonial evidence given by the Court" in *Crawford* ).

Erbo argues, based in large part on our decision in *Saget*, that regardless of their classification as business records, autopsy reports must be testimonial because a medical examiner preparing such a report must have a reasonable expectation the reports may be available for use in a subsequent trial. In *Saget*, we stated that "*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declar-

---

4. It should be noted that Chief Justice Rehnquist appears to have read *Crawford* to exclude business records from the definition of "testimonial" simply by virtue of their status as business records. *See Crawford,* 541 U.S. at 76, 124 S.Ct. 1354 (Rehnquist C.J., concurring) ("To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records.").

ant's awareness or expectation that his or her statements may later be used at a trial." *Saget,* 377 F.3d at 228. If this statement in *Saget* were controlling, autopsy reports would be testimonial and subject to the Confrontation Clause requirements that the witness be unavailable and the accused have had a prior opportunity to cross-examine him or her. That is, although autopsy reports are not prepared for use at trial, *see Rosa,* 11 F.3d at 332 (stating, "a medical examiner ... bears more similarity to a treating physician than he does to one who is merely rendering an opinion for use in the trial of a case" (internal quotation marks omitted)); *Durio,* 794 N.Y.S.2d at 869 ("That [an autopsy report] may be presented as evidence in a homicide trial does not mean that it was composed for that accusatory purpose or that its use by a prosecutor is the inevitable consequence of its composition."); *see also People v. Washington,* 86 N.Y.2d 189, 193, 630 N.Y.S.2d 693, 654 N.E.2d 967 (1995) ("The mandate of [the Medical Examiner's Office] is clear, to provide an impartial determination of the cause of death."), any medical examiner preparing such a report must expect that it *may* later be available for use at trial.

We do not believe, however, that this statement in *Saget* should be read to have adopted such an expansive definition of testimonial. Though helpful in framing the discussion of the issues under consideration in *Saget,* those statements concerning the scope of "testimonial" did not determine the outcome in that case. *See Saget,* 377 F.3d at 229 ("We need not attempt to articulate a complete definition of testimonial statements in order to hold that [the declarant's] statements did not constitute testimony."). Furthermore,

this Court's subsequent decision in *Mungo,* in which we considered *Crawford's* observation that " 'statements taken by police officers in the course of interrogations are also testimonial,' " suggests some further strictures on the scope of that term. *See Mungo,* 393 F.3d at 336 n. 9 (quoting *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354). While acknowledging that interrogation might include "any asking of questions," *id.,* we speculated the Supreme Court intended [5] the word to include only questioning characterized by " 'formality, command, and thoroughness for full information and circumstantial detail,' " *id.* (quoting *Webster's Third New International Dictionary* 1182 (1976) (definition for "interrogate")). That "more limited meaning," we reasoned, "is more consistent with the other types of testimonial statements," such as trial testimony and depositions, mentioned by the Court. *Id.* This discussion in *Mungo,* like that in *Saget,* is also dicta. Nonetheless, because a declarant responding to any type of questioning, as in *Mungo,* could still reasonably anticipate a responsive statement would be available for use at trial, *Mungo's* dicta undermine any suggestion that the reasonable expectation of the declarant should be what distinguishes testimonial from nontestimonial statements. Certainly, practical norms may lead a medical examiner reasonably to expect autopsy reports may be available for use at trial, but this practical expectation alone cannot be dispositive on the issue of whether those reports are testimonial.

Finally, we return to the decision in *Crawford* and note that the Supreme Court expressly declined to adopt a specific formulation of when a statement is "tes-

---

**5.** In *Crawford,* the Court expressly declined to define "interrogation," noting only that it "use[d] the term ... in its colloquial, rather than any technical legal, sense." *Crawford,* 541 U.S. at 53 n. 4, 124 S.Ct. 1354.

timonial." 541 U.S. at 68, 124 S.Ct. 1354. Given that the Supreme Court did not opt for an expansive definition that depended on a declarant's expectations, we are hesitant to do so here. In addition, we point out that the characterization of business records as nontestimonial only accords with the need to preserve the efficiency and integrity of the truth-seeking process. Chief Justice Rehnquist praised what he considered to be *Crawford's* per se exclusion of business records from the definition of testimonial. He wrote, "the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records. To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process." *Crawford,* 541 U.S. at 76, 124 S.Ct. 1354 (Rehnquist, C.J., concurring). Another court recognized the practical difficulties we avoid in considering autopsy reports nontestimonial:

> Years may pass between the performance of the autopsy and the apprehension of the perpetrator. This passage of time can easily lead to the unavailability of the examiner who prepared the report. Moreover, medical examiners who regularly perform hundreds of autopsies are unlikely to have any independent recollection of the autopsy at

issue in a particular case and in testifying invariably rely entirely on the autopsy report. Unlike other forensic tests, an autopsy cannot be replicated by another pathologist. Certainly it would be against society's interests to permit the unavailability of the medical examiner who prepared the report to preclude the prosecution of a homicide case.

*Durio,* 794 N.Y.S.2d at 869 (holding that autopsy reports are not testimonial by virtue of their status as business records). In sum, therefore, we hold that where a statement is properly determined to be a business record as defined by FED. R. EVID. 803(6), it is not testimonial within the meaning of *Crawford,* even where the declarant is aware that it may be available for later use at trial.

■ In this case, the autopsy reports qualified as business records under Rule 803(6).[6] Autopsy reports are "reports kept in the course of a regularly conducted business activity"; the Office of the Chief Medical Examiner of New York conducts thousands of routine autopsies every year, without regard to the likelihood of their use at trial. Nor do the Chief Medical Examiner's reports constitute the observa-

---

**6.** As noted above and discussed further below, in *Rosa,* we concluded that autopsy reports were admissible pursuant both to Rule 803(6) as business records and Rule 803(8) as a public record. *Rosa,* 11 F.3d at 331–33. In so holding, the Court in *Rosa* stated that the "district court dealt properly with the ... autopsy report.... It allowed in evidence the report's observations, and it excluded the factual conclusions drawn from those observations as required by 803(8)(C)." The record in this case does not reveal whether the factual conclusions—*i.e.* the cause of death—were redacted from the autopsy reports admitted in evidence. It is not entirely clear, however, whether such factual conclusion must be redacted where the autopsy report is admitted as a business record under Rule 803(6), as it

expressly permits the admission of "opinions" and "diagnoses," provided the other requirements of the Rule are satisfied. FED. R. EVID. 803(6). We need not resolve this question here for two reasons. First, Erbo has not challenged the admission, as business records, of either the reported observations or the factual conclusion in the autopsy reports. Second, even assuming *arguendo* that the reports' factual conclusions were admitted into evidence and the District Court erred in doing so, the error was harmless. These factual conclusions were also provided through the testimony of Dr. Gill, who offered his own opinion as to the cause of death for each of the victims based on his review of the reported observations in their respective autopsy reports.

tions of a police officer; § 557 of the New York City Charter describes the office as an "independent office" within the Department of Health and Mental Hygiene. *See also Rosa,* 11 F.3d at 332 (holding that the employees of the Medical Examiner's Office are "physicians and pathologists," not "attorneys" and that autopsy reports are business records); *Washington,* 86 N.Y.2d at 192, 630 N.Y.S.2d 693, 654 N.E.2d 967 (holding that under New York law, the Medical Examiner is "not subject to the control of the prosecutor"); *Durio,* 794 N.Y.S.2d at 867 (holding that "[u]nder New York law an autopsy report can be considered a business record. . . ."). Because the autopsy reports are business records as defined in FED. R. EVID. 803(6), they are nontestimonial.

## IV. The Autopsy Reports Are Admissible as Public Records

■ We hold that the autopsy reports are equally admissible as public records. For reasons substantially analogous to those outlined above, we find that public records are, indeed, nontestimonial under *Crawford,* 541 U.S. at 36, 124 S.Ct. 1354. The Federal Rules of Evidence define public records as "Records, reports, statements . . . in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report. . . ." FED. R. EVID. 803(8)(A–B). But this Rule is not unlimited. As with Rule 803(6), governing the admissibility of business records, Rule 803(8) excludes reports of "matters observed by police officers and law enforcement personnel. . . ." FED. R. EVID. 803(8)(B). In addition, Rule 803(8) excludes documents prepared for the ultimate purpose of litigation, just as does Rule 803(6). *United States v. Bohrer,* 807 F.2d 159, 162 (10th Cir.1986). In his interpretation of the *Crawford* opinion,

Chief Justice Rehnquist considered public records—alongside business records—to fall outside the "testimonial" ambit of the Confrontation Clause. *Id.* at 76, 124 S.Ct. 1354. (Rehnquist, C.J., concurring). These factors suggest that public records, like business records, "bear[ ] little resemblance to the civil-law abuses the Confrontation Clause targeted." *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354. We thus hold that public records are nontestimonial, and not subject to the strictures of the Confrontation Clause.

■ In this case, the autopsy reports qualified as public records. They are "record[s] . . . setting forth . . . activities of the office . . . or . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report. . . ." FED. R. EVID. 803(8)(A–B). According to § 557(f) of the New York City Charter, the Chief Medical Examiner has the duty to conduct autopsies in various situations, including when presented with "persons dying from criminal violence, by casualty, by suicide, suddenly . . . when unattended by a physician, in a correctional facility or in any suspicious or unusual manner or where an application is made pursuant to law for a permit to cremate the body of a person." As noted above, these reports are routine, and do not constitute the "observations of police officers." *See also Washington,* 86 N.Y.2d at 192, 630 N.Y.S.2d 693, 654 N.E.2d 967 (holding that the Medical Examiner is "not subject to the control of the prosecutor"); *Rosa,* 11 F.3d at 332 (holding that autopsy reports are public records); *Durio,* 794 N.Y.S.2d at 868 (holding that autopsies qualify as public records under New York law). Because autopsy reports are public records under FED. R. EVID. 803(8), they are nontestimonial.

238

## CONCLUSION

For the foregoing reasons, even though Erbo had no opportunity to cross-examine the medical examiners who prepared the autopsy reports, their admission into evidence did not violate the Confrontation Clause.

For the reasons stated herein and in the summary order filed this same date, the judgment of conviction is AFFIRMED.