10-2540-pr
Vega v. Walsh

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2011

(Argued: October 18, 2011    Decided:  February 17, 2012)

Docket No. 10-2540-pr

---

HENRY VEGA,

*Petitioner-Appellant*,

v.

JAMES WALSH, Superintendent, Sullivan Correctional
Facility,

*Respondents-Appellee*.

---

Before:
      KEARSE, LEVAL, and CHIN, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ross, *J.*) denying petitioner-appellant's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

AFFIRMED.

---

MARTIN MICHAEL LUCENTE, Legal Aid Society, New York, New York, *for Petitioner-Appellant*.

WILLIAM H. BRANIGAN, Assistant District Attorney (John M. Castellano, Assistant District Attorney, *on the brief*), *for* Richard A. Brown, District Attorney, Queens County, Kew Gardens, New York, *for Respondents-Appellees*.

---

PER CURIAM:

Petitioner-appellant Henry Vega, convicted of, *inter alia*, murder in the Supreme Court of the State of New York in 2002, appeals the denial of his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. Vega alleged that his rights were violated by the trial court's admission of (1) evidence of uncharged crimes and a tattoo featuring the word "Enforcer" and (2) the testimony of a medical examiner about an autopsy she had not performed. The district court rejected both claims. We affirm.

## BACKGROUND

On November 5, 1996, a police officer discovered the body of Thomas Hill in a baseball field in Kissena Park in Queens. He had been shot to death, and had bullet wounds in the chest, back, and head.

Vega and a co-defendant were arrested for Hill's murder. They were tried separately in New York State Supreme Court, Queens County. Vega was tried twice in early 2002. His first trial ended in a mistrial when the jury could not reach a verdict. The second trial resulted in Vega's conviction for murder and weapons possession.

At both trials, the Government presented evidence that Vega had solicited a murder-for-hire, owned guns, and dealt drugs, and had a tattoo featuring the word "Enforcer" on his

-2-

abdomen.  In addition, the Court permitted a medical examiner, Dr. Kari Reiber, to testify as an expert about the results of Hill's autopsy, which had been performed by another doctor in her office.  The autopsy report itself was not admitted into evidence.  Reiber testified that the prosecution's theory of Hill's death -- that Vega shot Hill, who was intoxicated from alcohol and cocaine, first in the chest and then twice more in the head once Hill was on the ground -- was consistent with the autopsy results.

On February 7, 2002, the jury found Vega guilty on all three charges -- one count of second-degree murder and two counts of possession of weapons.  On March 6, 2002, the trial court (Randall T. Eng, *J.*) sentenced Vega principally to twenty-five years to life in prison.

The Appellate Division, Second Department, affirmed his conviction on November 28, 2005, *People v. Vega*, 23 A.D.3d 680 (2d Dep't 2005), and the New York State Court of Appeals denied leave to appeal, *People v. Vega*, 6 N.Y.3d 782 (2006).

On December 6, 2006, Vega filed his petition below for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Vega v. Walsh*, No. 06-cv-6492 (ARR) (JO) (E.D.N.Y. Dec. 6, 2006), ECF No. 1.  Vega argued that the admission of evidence of uncharged crimes and Vega's "Enforcer" tattoo

deprived him of a fair trial and that the admission of Reiber's testimony violated his Sixth Amendment right to confront his accusers.[1]  *See Vega v. Walsh*, No. 06-cv-6492 (ARR) (JO), 2010 WL 1685819, at *1 (E.D.N.Y. Apr. 22, 2010). A magistrate judge (James Orenstein, *M.J.*) recommended denying Vega's petition in its entirety.  *Id.* at *21.  The district court (Allyne R. Ross, *J.*) adopted the recommendation and denied Vega's petition.  *Vega v. Walsh*, No. 06-cv-6492 (ARR) (JO), 2010 WL 2265043, at *4 (E.D.N.Y. May 28, 2010).

This appeal followed.

### DISCUSSION

A federal court may grant habeas relief under § 2254 if the state court's adjudication of a claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A federal court may reverse a state court ruling only where it was "so lacking in justification that there was . . . [no] possibility for fairminded disagreement."  *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011); *see also Cavazos v. Smith*, 132 S. Ct. 2, 7-8

---

[1]  Vega asserted a third claim below -- a *Batson*-related argument, *Vega*, 2010 WL 1685819, at *1 -- that has not been pursued on appeal.

(2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of deference to state courts in § 2254(d) habeas cases").

We review the district court's denial of a § 2254 petition *de novo*. *Harris v. Kuhlmann*, 346 F.3d 330, 342 (2d Cir. 2003). We conclude that the state court's rulings here were not contrary to and did not involve an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

First, Vega's arguments regarding the trial court's admission of evidence of Vega's uncharged crimes and "Enforcer" tattoo are without merit. In admitting the contested evidence, the trial court reasonably applied New York law in a manner that was not contrary to or an unreasonable application of United States law or the Constitution. Indeed, state trial court evidentiary rulings generally are not a basis for habeas relief. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See generally Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (noting Supreme Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"). The evidence at issue here was at least arguably relevant, and even assuming there was error,

the evidence was not "so extremely unfair that its admission violate[d] 'fundamental conceptions of justice,'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (citation omitted).

Second, Vega's claim that the medical examiner's testimony was improperly received likewise fails.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the admission of testimonial hearsay violates the Confrontation Clause absent "unavailability" of the declarant "and a prior opportunity for cross-examination." *Id.* at 68. A series of lower-court cases elaborating on the meaning of "testimonial" followed. This Court found in *United States v. Feliz*, 467 F.3d 227 (2d Cir. 2006), that autopsy reports are not testimonial and are admissible as public and business records. *Id.* at 236-38.

While this case was pending in the district court, the Supreme Court decided *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). There, the Supreme Court held that forensic "certificates of analysis" identifying a white powder seized from the defendant as cocaine were testimonial under *Crawford*. 129 S. Ct. at 2532 (reasoning that because reports underlying hearsay affidavits were made for "*sole purpose*" of providing evidence against defendant, he was entitled under Sixth Amendment to cross-examine authors of certificates of analysis). More recently, in *Bullcoming v.*

*New Mexico*, 131 S. Ct. 2705 (2011), the Supreme Court held that laboratory reports of blood alcohol tests are also testimonial. *Id.* at 2710; *see also id.* at 2722 (Sotomayor, J., concurring in part) (emphasizing that decision did not address situations where expert witness discussed testimonial statements not admitted into evidence).

Relying on *Melendez-Diaz* and *Bullcoming*, Vega argues that his rights under the Confrontation Clause of the Sixth Amendment were violated because autopsy reports are testimonial. Specifically, he contends that the medical examiner should not have been permitted to testify from a report about an autopsy she had not performed, where the medical examiner who performed the autopsy was not available for cross-examination. The district court rejected this argument on the basis that *Melendez-Diaz* created a new rule that did not apply retroactively to Vega. *Vega*, 2010 WL 2265043, at **3-4.

We need not decide whether the rulings of *Melendez-Diaz* or *Bullcoming* apply retroactively. Rather, habeas relief is barred because the state court rulings here were not contrary to clearly established federal law at the time. Section "2254(d)(1) requires federal courts . . . to measure state-court decisions 'against th[e Supreme] Court's precedents *as of "the time the state court renders its*

*decision."'"* *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (in turn quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003))) (emphasis in *Greene*).

At the time of the Appellate Division's affirmance of Vega's convictions, which was "the last state–court adjudication on the merits of [his] claim," *Greene*, 132 S. Ct. at 45, neither *Melendez-Diaz* nor *Bullcoming* had been decided. Hence, even if either of those cases "clearly established" that autopsy reports are testimonial within the meaning of the Confrontation Clause, the Appellate Division's ruling that the admission of Reiber's testimony was permissible was consistent with existing law and was not "contrary to [or] an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Indeed, *Crawford* was the Supreme Court's pronouncement in effect when the Appellate Division affirmed Vega's conviction. The question therefore is whether the Appellate Division's ruling was contrary to or an unreasonable application of *Crawford*. In *Crawford*, the Court ruled that a Confrontation Clause challenge turns on whether the hearsay was "testimonial." It provided three categories of testimonial statements: "[1] *ex parte* in-

court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [and 3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52 (internal quotation marks and citations omitted). The Court, however, declined to "spell out a comprehensive definition of 'testimonial.'" *Id.* at 68.

We conclude that the Appellate Division's decision was neither contrary to nor an unreasonable application of *Crawford*. Reasonable jurists could disagree (certainly back then) as to whether Reiber's testimony about the autopsy report came within the *Crawford* formulations. *Crawford*'s list of testimonial statements was nonexhaustive and its guidance was hardly definitive. Furthermore, although autopsies are often used in criminal prosecutions, they are also prepared for numerous other reasons -- including the determination of cause of death when there is no

anticipation of use of the autopsy in any kind of court proceeding. *See Feliz*, 467 F.3d at 236–37. Given the state of the law in 2005, we conclude that there was nothing unreasonable in the Appellate Division's conclusion that Reiber's testimony was not barred by the Confrontation Clause.[2] Accordingly, Vega is not entitled to § 2254 relief.

### CONCLUSION

We have considered all of Vega's contentions on this appeal and have found them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[2] Furthermore, although it is sufficient to rest our decision on the conclusion that the Appellate Division's ruling was not contrary to or an unreasonable application of federal law as it existed at the time, we also note that a fair issue exists as to whether the Appellate Division's decision would have been contrary to or an unreasonable application of *Melendez-Diaz* or *Bullcoming*, even assuming they had already been decided, as there are significant differences between narcotics and blood alcohol analyses and autopsies.

-10-