10-3866-pr
Blalock v. Fisher

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of May, two thousand twelve.

PRESENT:  GUIDO CALABRESI,
          ROBERT D. SACK,
          REENA RAGGI,
                    *Circuit Judges*.

-------------------------------------------------------------------------------------

MAURICE BLALOCK,
                    *Petitioner-Appellant*,

          v.                                                    No. 10-3866-pr

BRIAN FISHER, Superintendent of Sing Sing Correctional Facility,
                    *Respondent-Appellee*.

-------------------------------------------------------------------------------------

APPEARING FOR APPELLANT:     RANDA D. MAHER, Maher & Pittell, LLP, New York, New York.

APPEARING FOR APPELLEE:      ALYSON J. GILL, Assistant Attorney General, Of Counsel (Roseann B. MacKechnie, Deputy Solicitor General, Barbara D. Underwood, Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*; Ronald L. Ellis, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 14, 2010, is AFFIRMED.

Maurice Blalock appeals from the denial of his petition for habeas corpus under 28 U.S.C. § 2254.[1] Blalock contends that the New York Supreme Court Appellate Division, First Department, unreasonably applied federal law in denying him coram nobis relief for ineffective assistance of appellate counsel by failing to raise a claim that the prosecution's use of peremptory strikes to exclude African American jurors violated the Equal Protection Clause as construed in Batson v. Kentucky, 476 U.S. 79 (1986). We review the denial of a habeas petition de novo, see Vega v. Walsh, 669 F.3d 123, 126 (2d Cir. 2012), and we assume the parties' familiarity with the facts and record of the underlying proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Standard of Review

In considering Blalock's appeal, we are subject to several overlapping layers of deferential review. First, in considering Blalock's habeas claim, we may grant relief only if the state court—here, the First Department, which denied Blalock's ineffective assistance claim—rendered a decision that "was contrary to, or involved an unreasonable application

_____

[1] The district court granted Blalock a certificate of appealability, see 28 U.S.C. § 2253(c)(2), because "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter," Blalock v. Fisher, No. 04-cv-2252 (LAP), 2010 WL 2891185, at *6 (S.D.N.Y. July 12, 2010) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), as demonstrated by the district court's disagreement with the magistrate judge's recommendation to grant Blalock's habeas petition to the extent that his appellate counsel was constitutionally ineffective.

2

of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); see Williams v. Taylor, 529 U.S. 362, 412–13 (2000). Pursuant to that standard, we "may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" Vega v. Walsh, 669 F.3d at 126 (quoting Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011)). This is true even where, as in this case, the state court did not offer a written basis for its decision. "[T]he habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. at 784.

Second, the Sixth Amendment standard for ineffective assistance of counsel dictates deference to the strategic decisions of Blalock's appellate counsel, unless Blalock can show that (1) counsel's performance was objectively deficient, and (2) he was prejudiced by that deficient performance. See Strickland v. Washington, 466 U.S. 668, 688, 692–93 (1984); accord Morales v. United States, 635 F.3d 39, 43 (2d Cir.), cert. denied, 132 S. Ct. 562 (2011); see also Smith v. Robbins, 528 U.S. 259, 285–86 (2000) (holding that Strickland standard governs claims of ineffective assistance of appellate counsel). With respect to the deficiency prong, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689; accord Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011). Further, we will identify prejudice only if Blalock establishes that, but for his appellate counsel's deficient

3

performance, there is a "reasonable probability that . . . the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694; accord Morales v. United States, 635 F.3d at 43.

Third, insofar as Blalock's ineffective assistance claim hinges on the merits of his underlying Batson claim, we owe great deference to the trial court's finding that Blalock failed to show that the prosecution struck prospective jurors because of their race. See Miller-El v. Cockrell, 537 U.S. 322, 339 (2003). At voir dire, the trial court determined that Blalock established a prima facie case of discrimination based on the prosecution's striking of five of the venire's six African American members, but the court ultimately concluded that Blalock did not sustain his burden of proving that the prosecution's race-neutral justifications for its peremptory strikes were a pretext for discrimination. See Snyder v. Louisiana, 552 U.S. 472, 476–77 (2008) (setting forth three-step inquiry for Batson challenges); accord United States v. Farhane, 634 F.3d 127, 154–55 (2d Cir.), cert. denied sub nom. Sabir v. United States, 132 S. Ct. 833 (2011). This finding by the trial court presents a "pure issue of fact" that must be accorded significant deference by "a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court to make credibility determinations," and, thus, reviews only for clear error. Miller-El v. Cockrell, 537 U.S. at 339–40 (internal quotation marks omitted); see also People v. Hecker, 15 N.Y.3d 625, 656–57, 917 N.Y.S.2d 39, 59 (2010) (applying same deferential standard to appeals of state trial court determinations on Batson's third step), cert. denied sub nom. Black v. New York, 131 S. Ct. 2117 (2011).

4

In sum, we do not approach Blalock's ineffective assistance claim de novo. Instead, we review it through the prism of the state court decisions that precede us. Under that standard of review, Blalock is entitled to relief only if he can demonstrate that the Appellate Division unreasonably applied federal law in holding that Blalock failed to overcome the strong presumption that his appellate counsel rendered effective assistance by choosing not to challenge as clearly erroneous the trial court's finding that the prosecution did not commit a Batson violation. As we explain, Blalock cannot pass this demanding threshold.

2.      Ineffective Assistance of Counsel

The First Department's rejection of Blalock's ineffective assistance claim was not an unreasonable application of clearly established federal law because neither the deficiency nor prejudice prong of Strickland can be satisfied here, where the trial court's conclusion that the prosecution did not engage in racial discrimination was not clearly erroneous.

The trial court found that three of the five African American jurors struck by the prosecution, Gatewood, Raymond, and Roberts, had close relatives with criminal convictions. Gatewood's brother was convicted of robbery in Maryland, after a trial at which Gatewood provided character evidence on his brother's behalf. Raymond's son was convicted of credit card fraud and served part of his sentence in Raymond's house under court supervision. Roberts's brothers were convicted of drug-trafficking and robbery, respectively. Although all three prospective jurors told the court that they could be fair and objective in Blalock's case, this did not eliminate the prosecution's professed race-neutral concern that they would be sympathetic to the defense. See Messiah v. Duncan, 435 F.3d

5

186, 200 (2d Cir. 2006) (recognizing that, based on record, prosecution's concern that prospective juror would be sympathetic to defense was race-neutral justification for peremptory challenge). Thus, because the trial court was not compelled to accept Blalock's argument that peremptory exclusion of these three prospective jurors was race-based, Blalock would not be able to establish clear error on appeal.

In urging otherwise, Blalock notes that the prosecution did not excuse Dirca Garcia, whose cousin and uncle had been convicted of drug-trafficking offenses. See Miller-El v. Dretke, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step."). Because Blalock's trial counsel did not make this argument during voir dire, however, it would not have been preserved for review, see People v. Allen, 86 N.Y.2d 101, 110–11, 629 N.Y.S.2d 1003, 1008 (1995); accord People v. Rosemond, 226 A.D.2d 404, 404, 640 N.Y.S.2d 774, 774 (2d Dep't 1996), and thus appellate counsel cannot be deemed ineffective for not pursuing it. In any event, Garcia was distinguishable from the three aforementioned prospective jurors in that she was a part-time auxiliary law enforcement officer and had no involvement in her relatives' criminal cases. In short, there were race-neutral reasons to support a prosecution view that Garcia, unlike the excused prospective jurors, was not predisposed toward the defense.

As for prospective juror Banfield, the prosecution defended its exclusion by noting her disruptive behavior, "actively yelling out questions and giggling and trying to talk to the

6

people next to her." App. 66. While defense counsel disputed this characterization, the trial court ultimately found that, although Banfield had not been yelling, she had been giggling during voir dire, and that the prosecutor's observations of her demeanor were sufficiently accurate to conclude that Blalock did not prove pretext. See United States v. Farhane, 634 F.3d at 157 (stating that prospective juror's "distractedness" constitutes "sufficient race-neutral ground to support exercise of a peremptory challenge"). Where, as here, the resolution of a Batson challenge depends on the trial court's examination of the prosecutor's credibility and the juror's demeanor, a reviewing court will defer to that court's findings "in the absence of exceptional circumstances" because these determinations "lie peculiarly within a trial judge's province." Snyder v. Louisiana, 552 U.S. at 477 (internal quotation marks omitted); see People v. Hecker, 15 N.Y.3d at 656–57, 917 N.Y.S.2d at 59. Blalock has not demonstrated such exceptional circumstances here and, thus, would be unable to establish clear error on appeal.

Finally, the prosecutor explained that it excused prospective juror Richardson, a nurse who worked night shifts, because she did not seem "altogether there" during voir dire and was "just nodding her head to every question we ask," which made the prosecutor not "feel comfortable with her." App. 65. Defense counsel acknowledged that Richardson was likely tired because she had worked the night before, but did not think she was incapable of paying attention. Further, Richardson had previously served on a jury and confirmed that she could take days off of work, which would permit her to attend trial and be attentive. Nevertheless, the trial court agreed with the prosecution's description of Richardson, observing that "she

7

appears to be at the very least tired today," and that it was unclear why Richardson seemed fatigued. App. 71. On that basis, the trial court concluded that the prosecution's race-neutral explanation was not a pretext for race discrimination

As with the other challenged jurors, the trial court's ruling with respect to Richardson was based on findings as to the prosecutor's credibility and the prospective juror's demeanor, which a reviewing court could not overrule in the absence of exceptional circumstances, see Snyder v. Louisiana, 552 U.S. at 477, which are not present here.

Although Blalock now contends that other prospective jurors may also have had trying work schedules, he did not pursue that argument at voir dire, making it unavailable to appellate counsel. See People v. Allen, 86 N.Y.2d at 110–11, 629 N.Y.S.2d at 1008. Further, nothing in the record indicates that any such jurors appeared tired or unfocused in the same manner as Richardson. Insofar as the prosecutor did not excuse prospective juror Lamb, the record does not indicate that Lamb was tired or distracted during voir dire. Rather, the record reflects (1) that he had back problems, which he claimed would not limit his ability to participate as a juror, and (2) that he had to care for pets, which could be "annoy[ing]" to deal with if the jury were sequestered. App. 96. Lamb is not sufficiently similar to Richardson to render clearly erroneous the trial court's finding that the prosecutor's race-neutral explanation for striking Richardson was legitimate and not a pretext for race discrimination. See Unites States v. Farhane, 634 F.3d at 155.

3.    Conclusion

Because Blalock cannot establish that the trial court clearly erred in denying his
Batson motion, we cannot say that Blalock's counsel rendered constitutionally ineffective
assistance by choosing not to raise this issue on appeal, much less that the First Department
unreasonably applied federal law in denying coram nobis relief based on this ineffective
assistance claim.  Therefore, like the district court, we conclude that Blalock's habeas
petition must be denied.

We have considered Blalock's remaining arguments and conclude that they are
without merit.  The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

9